C. Frank REAVIS, Trustee for Babs B. Reavis, on behalf of himself and all other persons similarly situated, Plaintiff,

v.

GULF OIL CORPORATION, Transocean Gulf Oil Company, Inc. and Mene Grande Oil Company, Defendants.

Civ. A. No. 78–343.

United States District Court, D. Delaware.

Feb. 20, 1980.

---

4. Since the plaintiffs seek a jury trial, this alternative might pose special problems.

Thomas G. Hughes of O'Donnell & Hughes, Wilmington, Del., Richard D. Greenfield, Sterling H. Schoen, Jr., Robert P. Frutkin and Gilbert F. Ashley of Greenfield & Schoen, Bala Cynwyd, Pa., Victor P. Muskin, New York City, for plaintiff.

E. Norman Veasey of Richards, Layton & Finger, Wilmington, Del., Edward A. Fried- ·

man and Fredric W. Yerman of Kaye, Scholer, Fierman, Hays & Handler, New York City, Glenn C. Lucas, San Juan, P. R., and Kevin F. Cunningham, The Law Dept., The Gulf Companies, Houston, Tex., for defendants.

## MEMORANDUM OPINION

STAPLETON, District Judge:

Plaintiff has brought this action to recover what he alleges to be his share of the economic benefits realized by defendants as a result of Venezuela's nationalization of its private petroleum industry. Now before me are defendants' motions to dismiss the complaint on grounds of *forum non conveniens* or, alternatively, to stay this action pending resolution of legal questions raised herein by a Venezuelan court in a declaratory judgment action now pending before it.[1] For the reasons stated below the motions will be denied.

### I

Effective January 1, 1976, the government of Venezuela nationalized the private petroleum industry in that nation. The nationalization law required the government to indemnify private entities which theretofore had held concessions entitling them to explore for, produce, and sell oil in the areas described in their respective concession agreements. Coincident with nationalization, Venezuela, acting through its state-owned oil company, also entered into technical assistance and purchase and sale agreements with some former concessionaires. Prior to nationalization, concessionaires had frequently granted interests known as overriding royalties, which entitled the royalty holder to a specified percentage of crude oil produced on a concession or to the commercial value of such percentage. With nationalization, overriding royalty interests ceased to exist along with the concessions themselves. Unlike the concessionaires, however, overriding royalty holders received no compensation from the Venezuelan government.

The plaintiff in this action, a citizen of the United States and a resident of New York, at one time owned stock in two Venezuelan corporations which held royalty interests in concessions exploited by Mene Grande Oil Company ("Meneg"). The Venezuelan corporations were liquidated, respectively, in 1965 and 1971. As a result of the liquidations, fractional portions of the overriding royalty interests they had previously held were assigned to their shareholders, including plaintiff. The defendants in this action are Meneg, a subsidiary of Transocean Gulf Oil Corporation ("Transocean") and a sub-subsidiary of Gulf Oil Corporation ("Gulf"), Transocean, and Gulf. Meneg and Transocean are Delaware corporations, and Gulf is a Pennsylvania corporation authorized to do business in Delaware. When Venezuela nationalized its private oil industry, it paid Meneg more than sixty-nine million dollars as indemnification. Also effective January 1, 1976, Meneg and Venezuela's state-owned oil company entered into an agreement whereby Meneg undertook, in exchange for certain consideration, to provide technical assistance and support services with respect to the operation of production areas and facilities formerly operated by it. Meneg assigned the technical assistance agreement to Transocean, which, also as of January 1, 1976, entered into an oil purchase and sale agreement with the Venezuelan oil company.

Plaintiff claims that under the terms of the agreement creating the overriding royalties of which he owns fractional interests and under the nationalization law, he and other similarly situated owners of fractional

---

1. The Venezuelan declaratory judgment action, instituted by two defendants herein, is captioned *Mene Grande Oil Company and Transocean Gulf Oil Co. v. Charles Frank Reavis in his own name and in his role as "Fiduciario" or Trustee of Babs Beresford Reavis* (File No. 1528), and is before the Second Judge of the Court of First Instance for Mercantile Matters for the District of the Federal District Court

royalty interests[2] are entitled to a share of the economic benefits realized by defendants through indemnification, the technical assistance agreement, and the purchase and sale agreement. By refusing to permit royalty owners to participate in those economic benefits, plaintiff alleges, defendants have breached contractual, fiduciary, and confidential duties and have been unjustly enriched. Defendants respond that Meneg was indemnified pursuant to nationalization only for the physical assets relating to its concessions, rather than for the concessions themselves. They contend that the contracts creating the overriding royalties granted royalty holders no interest in those assets and that, accordingly, they are not entitled to share in the compensation received by Meneg therefor. They respond, further, that the technical assistance and purchase and sale agreements did not and were not intended to compensate them for the loss of their concession rights and that, consequently, royalty owners have no right to participate therein.

Defendants have not contested, nor could they, that this Court has jurisdiction of this action under 28 U.S.C. § 1332, or that venue is properly laid under 28 U.S.C. § 1391. They contend, however, that for a number of reasons Venezuela is a more appropriate forum. First, they argue, the controversy's contacts with Venezuela far outnumber its contacts with Delaware specifically or the United States in general. In particular, they point out that all events giving rise to plaintiff's cause of action occurred in Venezuela, that many members of the class plaintiff seeks to represent are Venezuelan residents, and that plaintiff's right to bring this action results from his investments in Venezuelan corporations. Second, defendants assert that essential witnesses reside and essential documents are located in Venezuela. Third, they contend that Venezuelan law controls each of plaintiff's claims for relief. Finally, they argue that the subject matter of the law suit concerns a matter of vital national interest, or *orden publico*, to Venezuela. Each of these factors, they aver, warrants dismissal of this action under the doctrine of *forum non conveniens* or stay pending resolution of the Venezuelan declaratory judgment action.

## II

Courts have traditionally been empowered to decline to entertain controversies over which they have jurisdiction and in which venue is proper where the action could more appropriately be maintained in another forum. This common law power was codified in 1948 in Section 1404(a) of Title 28 of the United States Code, which permits federal District Courts to transfer civil actions to any other federal division or district where they might have been brought if a transfer would be in the best interests of the parties, the witnesses, and justice. In cases not governed by Section 1404(a), such as where the more appropriate forum is a state or a foreign nation, courts retain the inherent power to dismiss on grounds of *forum non conveniens, Prack v. Weissinger*, 276 F.2d 446, 448 (4th Cir. 1960), though their discretion in doing so is more limited than it is in transferring an action under section 1404(a). *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

Prior to the enactment of Section 1404(a), when a federal Court declining to exercise jurisdiction on grounds of *forum non conveniens* was required to dismiss rather than transfer all actions, the Supreme Court enumerated the relevant considerations in the leading case of *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947):

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwill-

---

and the State of Miranda in Caracas, Venezuela.

2. Plaintiff's motion for certification of this action as a class action is currently pending before this Court.

ing, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [*sic*] of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. . . .

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. . . . There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

Federal courts have consistently and explicitly considered these factors in ruling on *forum non conveniens* motions since *Gilbert.* *See, e. g., DeMateos v. Texaco, Inc.,* 562 F.2d 895 (3d Cir. 1977), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978); *Alcoa Steamship Co. v. M/V Nordic Regent,* 453 F.Supp. 10 (S.D.N.Y.1978); *Dorizos v. Lemos and Pateras, Ltd.,* 437 F.Supp. 120 (S.D.Ala.1977). As to how a court should balance the relevant factors the Supreme Court in *Gilbert* stated:

It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

*Gulf Oil Corp. v. Gilbert, supra,* 330 U.S. at 508, 67 S.Ct. at 843. This too remains the general rule. *See, e. g., Hoffman v. Goberman,* 420 F.2d 423 (3d Cir. 1975). Under no

circumstance, however, according to *Gilbert* and subsequent cases, may a court dismiss an action under the doctrine of *forum non conveniens* unless an adequate alternative forum exists. *Gulf Oil Corp. v. Gilbert, supra,* 330 U.S. at 506–507, 67 S.Ct. at 842. *See also North Branch Products, Inc. v. Fisher,* 109 U.S.App.D.C. 182, 284 F.2d 611 (D.C.Cir.1960), *cert. denied,* 365 U.S. 827, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961); *Domingo v. States Marine Lines,* 340 F.Supp. 811 (S.D. N.Y.1972); *J. F. Pritchard & Co. v. Dow Chemical of Canada, Ltd.,* 331 F.Supp. 1215 (W.D.Mo.1971), *aff'd,* 462 F.2d 998 (8th Cir. 1972).

In *Gilbert* a Virginia tort plaintiff had sued a Pennsylvania corporation in New York federal Court for damages allegedly inflicted in Virginia. Had the New York Court dismissed the action without prejudice, plaintiff could still have sued defendant in Virginia federal Court. Accordingly, the *Gilbert* Court did not discuss whether the same factors would warrant the dismissal of an action on *forum non conveniens* grounds where to do so would relegate an American plaintiff to a foreign forum. While the Supreme Court has not since considered a case posing this question, it has indicated that, in deciding whether to grant a *forum non conveniens* dismissal having the effect of relegating an American citizen plaintiff to a foreign forum, a court must consider different factors than would be appropriate where the suit is between foreigners. *Swift & Co. Packers v. Compania Columbiana Del Caribe, S.A.,* 339 U.S. 684, 697, 70 S.Ct. 861, 869, 94 L.Ed. 1206 (1950). Lower courts have on occasion discounted the importance of a plaintiff's American citizenship, *see, e. g., Mizokami Bros. of Arizona v. Baychem Corp.,* 556 F.2d 975 (9th Cir. 1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 770, 54 L.Ed.2d 783 (1978); *Mohr v. Allen,* 407 F.Supp. 483 (S.D.N.Y. 1976), but the prevailing view is that if an American plaintiff can be relegated to a foreign forum at all, the circumstances in which it is appropriate to do so are narrowly limited. *See, e. g., Stewart v. Godoy-Sayan,* 153 F.Supp. 544 (S.D.N.Y.1957);

*Burt v. Isthmus Development Co.*, 218 F.2d 353 (5th Cir. 1955). As the District Court for the Southern District of New York has recently stated, "[T]he complaint of an American citizen should not be dismissed unless trial here would be unjust, oppressive or vexatious, rather than merely inconvenient, to the defendant". *Ionescu v. E. F. Hutton & Co.*, 465 F.Supp. 139, 145 (S.D. N.Y.1979). The Third Circuit Court of Appeals has adopted a similar statement of the rule:

> A citizen of the United States may have no absolute right to have his case tried in a federal court but his election of such a forum should not be disregarded in the absence of persuasive evidence that the retention of jurisdiction will result in manifest injustice to the [defendant] . . . . This is so even though the more convenient forum may be the foreign one.

*Mobil Tankers Co. v. Mene Grande Oil Co.*, 363 F.2d 611, 614 (3d Cir.), *cert. denied*, 385 U.S. 945, 87 S.Ct. 318, 17 L.Ed.2d 225 (1966). *See also Hoffman v. Goberman, supra*, 420 F.2d at 428.

■ Defendants' motions to dismiss or stay this action must be denied[3] because they have failed to demonstrate that adjudication of the controversy here would be either vexing, harassing, or oppressive or manifestly unjust to them. The fact that Venezuela has substantial contacts with the subject matter, parties, and potential class action plaintiffs involved in this litigation may have a bearing on the convenience to the parties of maintaining this action in Delaware and might influence an American court to recognize the judgment of a Venezuelan court, but it has nothing to do with any vexatiousness, harassment, or oppression associated with maintenance of the action here or with any injustice a disposition of the dispute by this Court would cause.

It is important, moreover, that the controversy's substantial contacts with the United States not be forgotten. As has already been noted, all present parties are American citizens. In addition, as defendants have acknowledged, of all holders of overriding royalty interests in Meneg concessions immediately prior to nationalization, on behalf of whom plaintiff seeks to have this law suit certified as a class action, fifty-nine per cent were American citizens while only thirty-three per cent were citizens of Venezuela.[4]

■ Defendants' contention that essential witnesses and documents are located in Venezuela also fails to justify the dismissal or stay of this action. The parties have hotly debated the need for such witnesses and documents. With respect to witnesses, for example, plaintiff argues that the bulk of witnesses, other than experts on Venezuelan law, will be citizens and residents of the United States, while defendants maintain that it will be necessary to call present and former officials of the Venezuelan government and the state-owned oil company as well as employees of Meneg still residing in Venezuela. Even if defendants' assertions as to the location of crucial evidence were to be credited, that factor would bear only on the convenience of the parties and would, accordingly, not justify dismissing this action by an American plaintiff. *See, e. g., Wahl v. Pan American World Airways, Inc.*, 227 F.Supp. 839 (S.D.N.Y. 1964). *See also Fiorenza v. United States Steel International, Ltd.*, 311 F.Supp. 117 (S.D.N.Y.1969). Nonetheless, it is worth noting, as did Judge Steel of this Court in the highly similar factual situation presented in *D'Angelo v. Petroleos Mexicanos*, 398 F.Supp. 72, 84 (D.Del.1975), that defendants' representations with respect to the necessity of calling as witnesses numerous Venezuelan residents appear "somewhat ov-

---

3. As defendants conceded at oral argument, the effect of a stay of this action would be indistinguishable from the effect of outright dismissal. Accordingly, I analyze both under the same legal principles.

4. Affidavit of Kevin F. Cunningham at 4, Sept. 11, 1979. It is true, however, that in the same year sixty-seven per cent of the royalties were paid to Venezuelan citizens and only thirty-one per cent to American citizens as a result of the Venezuelans' larger average individual interests.

erwrought." While at this stage it would seem necessary to hear the testimony of Venezuelan law experts with respect to the effect of nationalization and the meaning of various provisions of the instruments creating plaintiff's royalty interests, the relevance of the testimony of other Venezuelan residents is considerably less clear. As to documents, defendants represented at oral argument that some relevant documents are in the United States while others are in Venezuela, but they conceded that the location of the documents cannot be determinative of the motions before the Court. For the reasons given with respect to location of witnesses I agree.[5]

That some or all of plaintiff's claims may be governed by Venezuelan law also fails to justify the relegation of an American plaintiff to a foreign forum. Federal courts are often called upon to apply law foreign to the forum and with which they are unfamiliar. Aside from the difference in language, the task of interpreting the law of a foreign nation poses no difficulties not presented by the frequent necessity to interpret the laws of other states. There is no more reason, in general, to abstain from the former responsibility than from the latter. *See, e. g., Hoffman v. Goberman, supra*, 420 F.2d at 427; *D'Angelo v. Petroleos Mexicanos, supra*, 398 F.Supp. at 85.

Defendants also urge me to dismiss or stay this action on the basis of comity because, they assert, all matters affecting Venezuela's hydrocarbons are matters of *orden publico*, or vital national interest to that nation. In support of this proposition they refer to an Order entered by Judge Wright of this Court granting the motion of two of the same defendants involved herein to stay, pending the resolution of issues raised in a declaratory judgment action instituted by them in Venezuela, an action brought against them by Leeward Petroleum Ltd. *Leeward Petroleum Ltd. v. Mene Grande Oil Co.*, Civil Action No. 75–245 (D.Del., Order dated May 15, 1979).[6] The *Leeward* complaint sought damages from defendants for breach of contract, tortious conspiracy, and interference with contractual relations stemming from defendants' refusal to sell a quantity of oil to plaintiff.[7] In defense to the action defendants placed in issue a Venezuelan government decree which, they claimed, regulated the production and sale of oil by all concessionaires in Venezuela. Defendants asserted that under the decree they were required to obtain approval from the Venezuelan government for the proposed sale to Leeward and that when that approval proved not to be forthcoming, they were unable to go through with the sale. Defendants herein claim that Judge Wright's decision to stay the Delaware *Leeward* action reflected his determination that Venezuela's hydrocarbons laws are *orden publico* and should not be interfered with by an American court. Defendants also rely upon the following statement of the Venezuelan court in the declaratory judgment action instituted by Meneg against Leeward:

From this reasoning and legal provision above mentioned, it is inferred that, being MENE GRANDE OIL COMPANY, an oil corporation domiciled in Venezuela, *Concessionary* (at present ex-concessionary) of the State of Venezuela, and that the point at issue in writs is considered upon such matter, that is, upon buying

---

5. Nor is the fact that many of the documents are likely to be in the Spanish language entitled to much consideration. As Judge Schwartz of this Court stated in *Phoenix Canada Oil Co. v. Texaco, Inc.*, 78 F.R.D. 445, 454 (D.Del.1978):

    [I]t has been resolved beyond peradventure that courts in this country possess the capability to try cases dependent upon documents written in other languages and that such a factor is not sufficient independent cause for a forum non conveniens dismissal. Even if that were not generally the case, Spanish is hardly an obscure and abstruse language that would provide extreme difficulty in obtaining accurate translations.

6. The plaintiff in *Leeward* was a Bermuda corporation. In light of the importance I attach to the American citizenship of the plaintiff herein in deciding defendants' motions, *Leeward* is readily distinguishable.

7. Only five of the complaint's six counts were embraced by defendants' motions for a stay or to dismiss.

and selling of crude oil, a product of National riches submitted to Venezuelan laws, Judge considers that only National Courts of Venezuela may guarantee to Venezuelan State application and soung [*sic*] compliance of its Laws, Decrees and Regulations which must be in any case *strictly and rigorously of* ["Orden Publico"] *public order.*

(Emphasis is original).[8]

■ I need not decide in the context of these motions whether the fact that a particular controversy implicates the vital national interest of a foreign nation would warrant the dismissal or stay of the action by an American court, however, because I conclude that adjudication of this case in Delaware will not interfere with Venezuela's *orden publico.* First, I do not infer from Judge Wright's Order in *Leeward* that the defendants' motion was granted on the basis of *orden publico.* Moreover, even if, as indicated by the statement of the Venezuelan court, the Leeward controversy involved matters of *orden publico*, the same need not be true here. Resolution of the issues presented by Leeward, involving the permissibility of a sale of oil, could not fail to have an impact on the rate of depletion of Venezuela's hydrocarbons reserves. Here, in contrast, the dispute concerns the rights of private parties to economic benefits already derived from and already paid by the Venezuelan government. Thus, while the hydrocarbons laws themselves and controversies involving the rate of depletion of hydrocarbons reserves may be *orden publico*, the mere fact that in this case it may be necessary to interpret those laws in order to resolve an essentially private dispute does not support the granting of a dismissal or stay. *See Phoenix Canada Oil Co. v. Texaco, Inc., supra*, 78 F.R.D. 445, 453–454 (D.Del.1978); *D'Angelo v. Petroleos Mexicanos, supra*, 398 F.Supp. at 84–85; *Reavis v. Exxon Corp.*, 90 Misc.2d 980, 396 N.Y. S.2d 774, 776 (Sup.Ct.1977), *aff'd without*

*opinion*, 63 A.D.2d 869, 404 N.Y.S.2d 936 (1st Dept. 1978).[9]

■ Finally, at least two miscellaneous considerations support the denial of defendants' motions. First, Delaware is the state in which two of the defendants are incorporated; an especially strong showing is required to support a *forum non conveniens* motion where "plaintiff has ceded defendants the 'home turf' advantage." *Phoenix Canada Oil Co. v. Texaco, Inc., supra*, 78 F.R.D. at 453. Second, a particularly strong showing of vexatiousness, harassment, or oppression is required where defendant's economic capabilities are disproportionately greater than plaintiff's, as is true here. *D'Angelo v. Petroleos Mexicanos, supra*, 398 F.Supp. at 84. On the basis of these considerations, combined with those earlier discussed, it is apparent that plaintiff in this case should not be denied the forum of his choice.

### III

Because defendants have failed to demonstrate according to applicable standards that Venezuela is a more appropriate forum in which to litigate this dispute, and because the miscellaneous factors discussed above militate in favor of adjudication of the controversy by this Court, defendants' motions will be denied.

---

**8.** October 26, 1978 decision of the Second Judge of the Court of First Instance for Mercantile Matters for the District of the Federal District and the State of Miranda of the Republic of Venezuela, File No. 4995.

**9.** Plaintiff has instituted a similar suit involving Exxon Corporation in a New York state court.