**AMERICAN CYANAMID COMPANY, a Maine Corporation, and Shulton, Inc., a New Jersey Corporation, Plaintiffs,**

v.

**PICASO–ANSTALT, a Liechtenstein foundation, and Pierre Cardin, a citizen of the Republic of France, Defendants.**

**Civ. A. No. 90–1424(MTB).**

United States District Court,
D. New Jersey.

July 10, 1990.

Skadden, Arps, Slate, Meagher & Flom, Washington, D.C. by John C. Fricano, for plaintiffs.

Kane, Dalsimer, Sullivan, Kurucz, Levy, Eisele and Richard, New York City by David H.T. Kane, for defendants.

OPINION

BARRY, District Judge.

## I. INTRODUCTION

Plaintiffs American Cyanamid Company ("American Cyanamid") and Shulton, Inc.

("Shulton") filed this action on April 12, 1990 seeking declaratory, injunctive and monetary relief against Picaso–Anstalt ("Picaso") and Pierre Cardin ("Cardin") for their allegedly improper termination of a 1977 licensing agreement ("Licensing Agreement") and guarantee ("Guarantee") granting Shulton the right to manufacture and sell products bearing Cardin's name.

More specifically, Shulton seeks declaratory relief pursuant to 28 U.S.C. § 2201, asking the Court to declare that the Licensing Agreement and Guarantee are still in full force and effect. The Licensing Agreement, executed between Picaso and Shulton, grants Shulton the exclusive right to use the trademarks and trade names associated with Cardin in the manufacture and distribution of perfume products anywhere in the world except France. *See* Complaint at ¶ 1 and Exh. A. The Guarantee, executed between Cardin and Shulton simultaneously with the Licensing Agreement, constituted Cardin's personal guarantee that Picaso held the rights it licensed to Shulton, that Picaso would perform under the Licensing Agreement, and that Cardin would do all acts necessary or desirable in Shulton's opinion to perfect the rights Shulton was granted under the Licensing Agreement. *See* Complaint at ¶ 17 and Exh. B.

In addition to having the Court declare the Licensing Agreement and Guarantee in full force and effect, Shulton seeks to have the Court declare that Shulton properly exercised an option it held under the Licensing Agreement to purchase the Cardin name. *See* Complaint at ¶ 1.

For its part, American Cyanamid, the corporate parent of Shulton, seeks compensatory and punitive damages stemming from the allegedly negative impact that the purportedly improper termination of the Licensing Agreement has had on its ability to sell Shulton. *See* Complaint at ¶ 3.

Present before the Court are the motions of Picaso and Cardin to stay or dismiss this action in favor of litigation now pending in France. More specifically, Picaso and Cardin seek to have this Court stay adjudication in deference to the French proceedings under the doctrine of comity. In the alternative, they seek to have the action dismissed under the doctrine of *forum non conveniens*. For the reasons set forth below, both motions will be denied.

## II. FACTS AND PROCEDURAL BACKGROUND

### II(a). *The Parties*

Shulton is a corporation organized under the laws of the State of New Jersey, having its principal place of business in Clifton, New Jersey. Shulton is engaged in the business of manufacturing and distributing perfumes and other beauty aids. *See* Complaint at ¶ 9. American Cyanamid is a corporation organized under the laws of the State of Maine, having its principal place of business in Wayne, New Jersey. *See* Complaint at ¶ 10.

Picaso is a foundation organized under the laws of the Principality of Liechtenstein, having its principal place of business in Vaduz, Liechtenstein. Cardin, a citizen of France, is a well known designer of men and women's fashion products. Products bearing the Cardin name are sold throughout the world. *See* Complaint at ¶ 12.

### II(b). *The Licensing Agreement*

As indicated, the Licensing Agreement permitted Shulton to utilize the Cardin tradenames and trade marks [1] in the manufacturing and marketing of perfumes and other products on a world-wide basis except for France. More specifically, in exchange for $2,000,000.00, Picaso assigned the use of the names to Shulton and warranted that it would not re-assign or transfer any of the names to a third party. Picaso also pledged, *inter alia*, that it would provide Shulton with complete technical assistance in the development of new

---

**1.** The trademarks and trade names covered under the agreement are specifically set forth in a schedule attached to the agreement. The trade names covered under the agreement include, *inter alia*, CARDIN, PIERRE CARDIN, and CAR-DIN DE PIERRE CARDIN. *See* Licensing Agreement at Article I, ¶ (a) and Exhibit 1. For purposes of clarity, this opinion shall refer to the collective names covered under the agreement as "Cardin" or "the Cardin names".

products covered under the agreement. *See* Licensing Agreement at Articles III and IV.

In return for these and other promises, Shulton obligated itself to maintain the "high standing and reputation of Pierre Cardin and Picaso in the sphere of their activity", and granted Picaso the right to "reasonably control" the standards of all products upon which Shulton placed the Cardin name. *See* Licensing Agreement at Article VI, ¶ 1. In this regard, Picaso and Cardin himself[2] were given rights of inspection and approval over new products created by Shulton. *See* Licensing Agreement at Article VI, ¶¶ 1–2; Article VII.

In addition to the foregoing, the Licensing Agreement provided Shulton with the option to purchase all of Picaso's rights to the tradenames and trade marks covered under the agreement for $500,000.00. *See* Licensing Agreement at Article XI. Shulton also possessed the right to assign part or all of its rights under the agreement without prior approval of Picaso. *Id.* at XIII. Finally, the agreement also provided that its terms were to be governed by the laws of the State of New York. *Id.* at Article XV.

IIc. *The Dispute*

In a manner which is only befitting of two parties accustomed to masking the unpleasantries of life in the gentle aroma of innocence, both plaintiffs and defendants have presented factual scenarios which differ in subtle but material ways. The facts, including the variations presented by the parties, are as follows.

In February, 1990, American Cyanamid announced that it was selling its Shulton subsidiary. Shulton asserts that, prior to the announced sale, it maintained a healthy working relationship with Cardin and Picaso. In particular, Shulton asserts that it was successfully collaborating with Cardin through its French affiliate, Society Nouvelle de Distribution de Parfums Internationaux ("SNDPI"), in the development of Rose Cardin, a new fragrance for women. *See* Complaint at ¶ 22.

Shulton further avers, however, that its relationship with Picaso and Cardin changed dramatically after American Cyanamid announced that Shulton would be sold. *See* Complaint at ¶ 23–24. In particular, Shulton alleges that Cardin approached American Cyanamid after the announcement of the sale and indicated his desire to repurchase the rights to his name under the Licensing Agreement at a favorable rate, but was informed that he would be required to bid on the assets at fair market value, as would any other purchaser. *Id.* at ¶ 23. Apparently angered at his treatment by Shulton, Cardin "became uncooperative on all ventures involving product lines bearing his name or associated trademarks". *Id.* at ¶ 24. In particular, Cardin allegedly refused to further participate in the development or promotion of Rose Cardin—a venture in which Shulton and SNDPI claim to have invested millions of dollars—and, in fact, took formal action to terminate Shulton's rights under the agreement. *Id.* Shulton describes these tactics as having been "merely a bargaining ploy designed to force Shulton to sell the rights to the [t]rademarks to Cardin at a price far below their fair market value". *Id.* at ¶ 25.

Picaso and Cardin, in contrast, assert that both prior to and after the announced sale of Shulton, they had raised numerous quality control objections regarding the manner in which Shulton manufactured and marketed products bearing the Cardin name, and that the termination of Shulton's rights under the agreement was undertaken solely to preserve the integrity of the product lines. *See* Picaso Movant Brief at pp. 3–4; *see also* Declaration of John P. Heinzen, filed May 22, 1990 (hereinafter "Heinzen Dec. I") at ¶¶ 3–4.

Thus, although it is acknowledged that Cardin participated in negotiations regarding the sale of Shulton, these negotiations are described as having been undertaken strictly with an eye towards "resolv[ing] the quality control problems", *see* Picaso

---

**2.** Cardin appears to have been in full control of Picaso and in fact signed the Licensing Agreement in his own name on behalf of Picaso. *See* Licensing Agreement at Article XVI.

Movant Brief at p. 4, and not out of any desire to circumvent the provisions of the Licensing Agreement which permitted Shulton to assign its rights under the agreement to any third party without prior approval from Picaso or Cardin. *See* Picaso Reply Brief at pp. 1–2. Indeed, Picaso and Cardin assert that the sale of Shulton itself is merely indicative of the fact that Shulton had lost all interest in satisfying the standards of quality called for under the Licensing Agreement, and that "plaintiffs ... were ... bent solely on unloading the business for the largest possible profit". *Id.* at p. 2.

After relations broke down between the parties in early April, 1990, the events leading to the present litigation and the companion case in France followed in rapid order. Shulton received notice of termination from Picaso (dated March 29, 1990) and from Cardin (dated April 2, 1990) on April 6, 1990. Three days later, on April 9, 1990, Cardin filed suit before the Court of Commerce, in Paris, naming Shulton and SNDPI as defendants. *See* Heinzen Dec. I at Exh. 1. In the French action, Cardin seeks a declaration that the Licensing Agreement was validly terminated as well as monetary and injunctive relief for the damage purportedly done to the Cardin name.

On April 12, 1990, three days after suit was initiated in France, Shulton filed suit in this Court seeking a declaration that the Licensing Agreement was still in force between the parties. *See supra.* In addition, as indicated, American Cyanamid filed for damages for tortious interference with the sale of Shulton.

It was on April 12, 1990, as well, that Shulton formally exercised its option to purchase the rights under the Licensing Agreement. One day later, on April 13, 1990, Cardin filed a supplemental action in France against American Cyanamid—a party not named in the original suit—seeking compensatory damages for harm caused to the Cardin marks. *See* Heinzen Dec. I at Exh. 6.

Subsequent to the filing of the complaint in this Court, the parties consented to the entry of a preliminary injunction estopping Picaso and Cardin from offering, selling or licensing the Cardin names to any third party. *See American Cyanamid, et. al., v. Picaso Anstalt, et al.,* No. 90–1424 (May 14, 1990). Discovery has proceeded on an expedited basis. Picaso and Cardin filed the present motion to stay or dismiss on May 17, 1990.

## III. DISCUSSION

I note as a preliminary matter that although the parties have separately addressed the merits of stay versus dismissal, I see little practical difference. Were this Court to simply stay this matter in favor of the French action, the result would be virtually identical to a dismissal on ground of *forum non conveniens.* In the event of a stay, the decision reached in the French tribunal would be binding on American Cyanamid and Shulton, absent a showing of prejudice or fraud. *See, e.g., Kohn v. American Metal Climax, Inc.,* 458 F.2d 255, 302 (3rd Cir.1972), *cert. denied,* 409 U.S. 874, 93 S.Ct. 120, 132, 34 L.Ed.2d 126 (1972). This is a result which would obviously be no different from that which would result by relegating American Cyanamid and Shulton to the French forum as an initial matter under *forum non conveniens,* where, obviously, they would also be bound by any decision handed down by the French court.

Accordingly, although I shall briefly address the propriety of a stay as a separate matter, *see* Part IIIb *infra,* I shall primarily address both motions under the framework developed for the resolution of motions to dismiss under *forum non conveniens.* The factors informing the decision on *forum non conveniens* appear to be fully responsive to those informing a decision to stay, and a detailed presentation on both grounds is simply unwarranted. This approach is one regularly adopted by the district courts of this Circuit. *See, e.g., Reavis v. Gulf Oil Corp.,* 85 F.R.D. 666, 671, n. 3 (D.Del.1980) (defendant's motions to dismiss complaint on grounds of *forum non conveniens* or, in the alternative, to stay pending resolution of Venezuelan ac-

tion addressed together under doctrine of *forum non conveniens* ).

III(a). *Forum Non Conveniens: An Overview*

■ The doctrine of *forum non conveniens* is a principle of comity and efficiency designed to prevent undue vexation and oppression of a defendant who is forced to litigate in a forum which bears little relationship to the events giving rise to the dispute. While implementation of the doctrine is a matter largely entrusted to the discretion of the Court, it must be sparingly applied, inasmuch as its application results in the dismissal of a case over which the Court has jurisdiction and would ordinarily have a duty to resolve. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). *See also Hoffman v. Goberman*, 420 F.2d 423, 426 (3rd Cir.1970).

■ Accordingly, in any *forum non conveniens* analysis, substantial weight is given to plaintiff's choice of forum. *See Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843. This is particularly true where plaintiff is a citizen of the forum state. *See Mobil Tankers Company v. Mene Grande Oil Company*, 363 F.2d 611 (3rd Cir.1966), *cert. denied*, 385 U.S. 945, 87 S.Ct. 318, 17 L.Ed.2d 225 (1966). This deference ensures that the Court will not improperly abdicate its duty to properly resolve cases in a manner and in a place consistent with the legitimate expectations of its own citizens.

In this regard, it has long been the law that particular deference is given to an American citizen's right to litigate in a federal forum. As the Court of Appeals for the Third Circuit has stated:

A citizen of the United States may have no absolute right to have his case tried in a federal court but his election of such a forum should not be disregarded in the absence of persuasive evidence that the retention of jurisdiction will result in

manifest injustice to the [defendant].... This is so even though the more convenient forum may be a foreign one.

*See Mobil Tankers*, 363 F.2d at 614 (citations omitted). *See also Reavis*, 85 F.R.D. at 671 ("[I]f an American plaintiff can be relegated to a foreign forum at all, the circumstances in which it is appropriate to do so are narrowly limited"). The fact that a lawsuit proceeds in the plaintiff's native forum also carries a presumption of convenience. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–256, 102 S.Ct. 252, 265–266, 70 L.Ed.2d 419 (1981) ("The District Court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified.... When the home forum has been chosen, it is reasonable to assume that this choice is convenient").[3]

■ With this background in mind, I turn now the substance of the motion before me. In determining whether or not to grant a motion to dismiss for *forum non conveniens*, the Court must first ascertain whether there is an adequate alternative forum in which suit may be brought. *See Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3rd Cir.1988); *see also Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3rd Cir.1989). If there is an adequate alternative forum, the Court must then weigh and balance several private and public interest factors to determine whether or not dismissal is appropriate. *Lacey*, 862 F.2d at 43; *Lony*, 886 F.2d at 663. At all times during the inquiry, the defendant bears the burden of persuasion. *Lacey*, 862 F.2d at 44 (*noting In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1164 (5th Cir.1987)).

III(a)(i). *Adequate Alternative Forum*

■ For the purposes of deciding the present motion, I shall assume without deciding that which appears to be obvious from the facts presented, that is, that the French tribunal is an adequate alternative

---

**3.** I note in passing that Picaso and Cardin have argued that American Cyanamid and Shulton's choice of forum should not be accorded the substantial deference which would otherwise be due, in that they filed the present action after litigation was already pending against them in France. *See* Picaso Reply Brief at pp. 11–13. Picaso and Cardin have cited no authority for this proposition and, indeed, the case law appears to admit to no such exception. *See, e.g., Reavis, supra.*

forum in which to resolve the dispute between the parties. An assumption rather than outright finding of fact is warranted inasmuch as American Cyanamid and Shulton have presented the Court with the opinion of French counsel that the French court may be unable to exercise jurisdiction over them. *See* Declaration of Roger L'Eleu, dated May 28, 1990 (hereinafter "L'Eleu Dec.") at ¶ 5. While the specific nature of the jurisdictional challenge is not fully delineated in the declaration submitted (and, indeed, has been countered by Picaso and Cardin with a parallel submission of their own, *see* Declaration of John P. Heinzen, dated June 1, 1990 (hereinafter "Heinzen Dec. II") at ¶¶ 2–5), the submission of American Cyanamid and Shulton raises questions sufficient to warrant the exercise of caution. In any event, this a matter over which the Court need not tarry, inasmuch as it is clear that the motion to dismiss would not be granted even were the French forum a jurisdictionally competent one in which to bring suit. *See infra.* Assuming, then, that the French forum would have jurisdiction over both American Cyanamid and Shulton, and that the French forum would be fully capable of resolving the issues presented, I turn to an analysis of the private and public interest factors.

IIIa(ii). *Private Interest Factors*

█ The private interest factors which the Court must consider in a *forum non conveniens* analysis were succinctly set forth by the Supreme Court in *Gulf Oil v. Gilbert, supra,* and include:

a) the relative ease of access to sources of proof;

b) availability of compulsory process for attendance of unwilling, and the cost of obtaining willing, witnesses;

c) possibility of view of premises, if view would be appropriate to the action;

d) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*See Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843.

In considering the relative ease of access to sources of proof and the availability of witnesses, the Court "must scrutinize the 'substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant to, the plaintiff's cause of action and to any potential defenses to the action'". *See Lacey,* 862 F.2d at 46 (*quoting Van Cauwenberghe v. Biard,* 486 U.S. 517, 528, 108 S.Ct. 1945, 1952–1953, 100 L.Ed.2d 517 (1988)). In order for a defendant to prevail, the private interest analysis must "'establish ... oppressiveness and vexation to a defendant ... out of all proportion to a plaintiff's convenience". *Lony,* 886 F.2d at 635 (*quoting Piper,* 454 U.S. at 241, 102 S.Ct. at 258).

Although it is a close call, the application of the pertinent private interest factors indicate that dismissal is unwarranted. The substance of the dispute between the parties, as succinctly stated by Picaso and Cardin, "is Shulton's alleged failure to adhere to Cardin quality standards", *see* Picaso Movant Brief at 15, and, concomitantly, whether the alleged termination of the Licensing Agreement was proper.

In considering where the relevant documentation is located with respect to the dispute, one can only conclude that both forums contain relevant evidence. There are obviously pertinent documents in France relating to Shulton's development of products there, just as there are obviously pertinent documents at Shulton's headquarters in New Jersey relating to the sale and control of Cardin products throughout the territory covered under the licensing agreement which, as noted, covered all areas of the world *except* France.

█ Thus, under the facts presented the parties appear to be at equipoise with respect to the location of pertinent documents. Where the convenience of the parties is roughly balanced, however, dismissal is unwarranted. *See Lony,* 886 F.2d at 635. Indeed, even were I to conclude that the balance tipped slightly in favor of the defendants, dismissal would be unwarranted. "When the court found the private interest factors to be 'at equipoise' (or tipped toward the defendant), it should

have concluded that they weighed in favor of retaining jurisdiction, not that they tipped 'toward dismissal' ". *Id.*[4]

As to the availability of compulsory process, there can be little doubt that this Court is capable of summoning all of the relevant personnel involved on both sides of the case. *See* Fed.R.Civ.P. 30(b)(6). Compulsory attendance in this forum will undoubtedly impose costs on Picaso and Cardin that they would not have to bear were this action dismissed. In this regard, those costs do not tip the balance in favor of dismissal, particularly when due weight is given to plaintiffs' choice of forum.

In summary, the private interest factors weigh in favor of retaining rather than dismissing this matter. While there are weighty contacts in each forum, it simply cannot be said that trial in this forum "would establish oppressiveness and vexation to defendants out of all proportion to plaintiffs' convenience". *See Lacey,* 862 F.2d at 42 (*noting Piper,* 454 U.S. at 241, 102 S.Ct. at 258). *See also Lony,* 886 F.2d at 635 ("If the balance of private interest factors is close to equipoise ... that would not favor dismissal").

III(a)(iii). *Public Interest Factors*

While it may be that the private interest factor analysis presents something of a close call, the public interest factor analysis does not; as will be seen below, the majority of the public interest factors point squarely towards the retention of jurisdiction in this forum.

The public interest factors which the Court must consider in a *forum non conveniens* analysis include:

a) the administrative difficulties flowing from court congestion;

b) the local interest in having localized controversies decided at home;

c) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;

d) the avoidance of unnecessary problems in conflict of laws or the application of foreign law;

e) the unfairness of burdening citizens in an unrelated forum with jury duty.

*See Gulf Oil,* 330 U.S. at 509, 67 S.Ct. at 843; *Piper,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6; *Lacey,* 862 F.2d at 48. In evaluating the pertinent public interest factors, the Court "must 'consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum,' " *Lacey,* 862 F.2d at 48 (*quoting VanCauwenberghe v. Biard,* 486 U.S. 517, 528, 108 S.Ct. 1945, 1952–1953, 100 L.Ed.2d 517 (1988).

With reference to the locus of the alleged culpable conduct, it is of significance that the agreement in question governed all areas of the world *except* the area in which defendants' seek to pursue plaintiffs and that, *a fortiori,* the vast majority of any damage to the Cardin name resulting from Shulton's actions occurred outside the forum in which defendants would have this suit proceed.

As to the administrative congestion present in this Court, Picaso and Cardin have succinctly summarized the state of the civil docket of this Court. *See* Declaration of John G. Gilfillan III, dated May 16, 1990 (hereinafter "Gilfillan Dec.") at ¶¶ 3–4. In particular, they correctly point out that the resolution of civil matters is often delayed by the precedence which must be accorded criminal matters pending

---

**4.** Picaso and Cardin have also indicated that the French action is more comprehensive in that SNDPI is a party to the French action but is not a party here. *See* Picaso Movant Brief at 10–11. While this fact obviously carries some weight in the *forum non conveniens* analysis, it cannot be considered dispositive, particularly where SNDPI is not a signatory to the Licensing Agreement or the Guarantee, the central focus of this lawsuit. In addition, while Picaso and Cardin have also represented to the Court that SNDPI may soon be sued in France in a criminal matter relating to the proposed launch of Rose Cardin, *see* Picaso Movant Brief at p. 11, or under the provisions of a 1985 licensing agreement between itself and Cardin, the Declaration of M. L'Eleu indicates that neither of these proceedings would be consolidated with the French action currently pending there, *see* L'Eleu Dec. at ¶ 14, and thus it appears that there is little or no additional efficiency to be gained from a "consolidation" of the litigation in France.

before the Court. *See* 18 U.S.C. § 3161 (Speedy Trial Act).

In addition to pointing to the possibility of delay here, Picaso and Cardin have submitted the opinion of their French counsel averring that no such delay will occur in the Court of Commerce in Paris. *See* Heinzen Dec. I at ¶ 10; *see also* Declaration of Fernand Cohen, dated June 5, 1990 (hereinafter "Cohen Dec.") at ¶¶ 2–8. While this testimony is directly contradicted by the opinion of American Cyanamid and Shulton's own French counsel, *see* L'Eleu Dec. at ¶¶ 2–15—who, in fact, projects a delay equal or greater than any which could be expected to occur in this Court—a resolution of these contradictory opinions is one which I need not reach for it is clear that, even were I to accept the opinion of Picaso and Cardin's counsel, dismissal would not be appropriate. As has been demonstrated above and will be further addressed below, the majority of factors favor retention of jurisdiction in this forum, and any incremental delay associated with proceeding here is clearly not outweighed by the additional difficulties of proceeding in France.

As indicated, in addressing the public interest factors, the Court must attempt to ensure that the resolution of the case takes place in a forum that "is at home with the law that must govern the case", and that there be an avoidance of the practical problems associated with the application of foreign law. *See supra*. It is clear that both of these goals will be met if this case is tried here and, concomitantly, that both will be frustrated if this case is dismissed.

The Licensing Agreement between the parties expressly states that it shall be governed by the law of the State of New York. *See* Licensing Agreement at Article XV. It certainly would be both more convenient and practical for this Court to resolve a contract claim governed by the laws of New York than it would be for a judge of the Court of Commerce to do so. Dismissal of the case in favor of the French action would require a court unschooled in our laws to apply statutory law and common law precepts in what would clearly be a cumbersome process requiring, as well, substantial translation services. In contrast, retention of the suit here would avoid all of these problems. *See Everett/Charles Contact Prod. v. Gentec, S.A. R.L.,* 692 F.Supp. 83, 88–89 (D.R.I.1988) (district court declines to dismiss declaratory judgment action involving exclusive licensing agreement between American and French company in favor of first filed French action pending in Court of Commerce on ground that contract between parties was written in English and governed by Rhode Island law).

III(a)(iv). *Forum Non Conveniens: Summary*

After giving due consideration to plaintiffs' choice of forum and the private and public interests involved, there can be no doubt that dismissal for *forum non conveniens* is unwarranted. While the private interest factors are roughly balanced, the public interest factors are not, with the latter weighing heavily in favor of retention of jurisdiction in this forum. From an overall perspective, it simply cannot be said that these American plaintiffs should be relegated to a foreign forum to resolve claims under an agreement governed by American law covering all the sales territory of the world except the territory where the foreign forum is located. The motion to dismiss under *forum non conveniens* will be denied.

III(b). *Motion to Stay*

While, as previously indicated, an analysis of whether *forum non conveniens* is or is not warranted fully encompasses the concerns expressed in a motion to stay, defendants' "first filed" argument warrants some discussion.

■ Picaso and Cardin have repeatedly argued that the French action is the "first filed" case and, therefore, that deference is appropriate on the ground of comity. There are several problems with this argument. In addition to adopting a definition of "comity" set forth in a now overruled Supreme Court case dealing with the rather unique problems of exhaustion of state remedies in matters of federal habeas corpus review, *see Darr v. Burford,* 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761

(1950), *ovr'd, Fay v. Noia,* 372 U.S. 391, 435, 83 S.Ct. 822, 847, 9 L.Ed.2d 837 (1963), Picaso and Cardin have overlooked the fact that the "first to file" rule is a rule of resource conservation adopted to deal with situations involving similar lawsuits pending within the same sovereign's jurisdiction, not situations involving similar lawsuits pending in different jurisdictions, where the preferred course of action is to permit each sovereign to reach judgment and apply the findings of one to the other under the principles of *res judicata. See, e.g., Sea Containers, Ltd. v. Stena AB,* 890 F.2d 1205, 1213–1214 (D.C.Cir.1989).

In this regard, defendants' argument is similar to one examined and rejected by the United States District Court for the District of Delaware in *Cliffs–Neddrill Turnkey International–Oranjestad v. M/T Rich Duke,* 734 F.Supp. 142 (D.Del.1990). In the course of declining to dismiss the action pending before it in favor of a first-filed action pending in The Netherlands, the Court noted:

> The "comity" argument could also be interpreted as urging the application of a "first-filed rule." However, "[t]he rule has never been applied, and in fact it was never meant to apply where the two courts involved are not courts of the same sovereignty." *Compagnie Des Bauxites De Guinea v. Insurance Co. of North America,* 651 F.2d 877, 887 n. 10 (3rd Cir.1981).... When related cases are before two different sovereigns, the appropriate procedure is to permit both jurisdictions to proceed, with any decision of one becoming res judicata on the other.... (additional citations omitted).

*See Cliffs–Neddrill, supra,* at 148.[5] *See also Moore v. Little Giant Indus., Inc.,* 513 F.Supp. 1043, 1051 (D.Del.1981), *aff'd* 681 F.2d 807 (3rd Cir.1982) (declining to stay federal district court proceeding in favor of Utah action).

While one might also read Picaso and Cardin's "first to file" argument as a call for judicial efficiency—presumably on the

ground that the court first obtaining jurisdiction will have already expended some resources on the case—I note that it is this Court, and not the French court, which has taken the lead in resolving the issues presented. This Court had already heard American Cyanamid and Shulton's application for a temporary restraining order, has supervised the substantial discovery requests already tendered by the parties, and a preliminary injunction has been entered. In contrast, there is no indication that the French court has taken any action on this matter. In short, it makes eminently more sense to allow this matter to proceed here. *See, e.g., I.A.J., Inc. v. Marine Holdings, Ltd.,* 524 F.Supp. 197, 198 (E.D.Pa.1981) ("Where foreign litigation is in its incipiency, motions to stay the domestic action are properly denied"). Accordingly, I see little merit in Picaso and Cardin's "first filed" argument.

## IV. CONCLUSION

For the reasons set forth above, the motions of defendants Picaso Anstalt and Pierre Cardin to stay this action on the ground of comity or to dismiss for *forum non conveniens* shall be denied. An appropriate order shall issue.

---

5. I note in passing that Picaso and Cardin have attempted to distinguish the *Cliffs–Neddrill* case by noting that the case involved dismissal in favor of a different national sovereign, and not a stay. Again, this is a distinction without a difference.