95 N.J. Super. 344 (1967)
231 A.2d 232
DANIEL F. DeLEAR, TRUSTEE, ETC., PLAINTIFF-APPELLANT,
v.
ROZEL PACKING CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 29, 1967.
Decided June 19, 1967.
*346 Before Judges GAULKIN, LEWIS and LABRECQUE.
Messrs. Ravin & Ravin, attorneys for appellant (Mr. David N. Ravin, of counsel).
Messrs. Collins & Toner, attorneys for defendant-respondent (Mr. Edward J. Toner, of counsel; Mr. Charles Rusen, Jr., on the brief).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
Plaintiff, trustee in bankruptcy of Allied Crude Oil and Refining Corporation and three related *347 companies (hereafter Allied), filed a complaint in the Chancery Division to recover alleged preferential payments and transfers made by Allied to defendant Rozel Packing Corporation, a New York corporation, which specializes in exporting agricultural commodities. Service upon Rozel was made by registered mail to its New York office, pursuant to R.R. 4:4-4(d). Thereafter, defendant moved to dismiss the action or, in the alternative, to quash service of process for lack of jurisdiction in personam. Following oral argument and consideration of the complaint, the deposition of Harold Nickelsberg, Rozel's vice-president, and Nickelsberg's affidavit in support of the motion, the motion was granted. Plaintiff appeals.
The relationship between Allied and Rozel arose out of three financing transactions. On May 7, 1963 Ronald Platt, an agent of Allied, from its office in New Jersey, telephoned Nickelsberg at Rozel's office in New York, requesting that Rozel lend Allied $75,000 to be secured by commodities equal to 120% of the loan, with compensation to the lender of 1/8 cent per pound of the collateral security. Platt later informed Nickelsberg by telephone that the collateral would consist of Choice White All Hog Grease stored at the Harbor Tank Storage Company in Bayonne, New Jersey. Nickelsberg obtained approval of the loan from the principal officers of Rozel, arranged to borrow the money from Rozel's New York bank, the Irving Trust Company, and for the bank to handle the details. He so advised Platt by telephoning him in New Jersey. On May 9, 1963, at Rozel's direction, Irving Trust delivered $75,000 to Allied at the bank, charging it to Rozel's account; in exchange Allied delivered to the bank a warehouse receipt covering the grease; the warehouse receipt served as collateral both for the loan from Rozel to Allied and from the bank to Rozel.
In June 1963 Allied's messenger delivered checks for $75,000 and $1,762.50 in payment of the loan and the agreed compensation for it, to defendant at its office in New York. Rozel then paid Irving Trust. However, the warehouse receipt *348 itself was retained by the bank and was "rolled over" as security for a second $75,000 loan, arranged upon the same terms and procedure. This was repaid in the same fashion in July 1963. A week later a third loan agreement was made, this time for $50,000. A new warehouse receipt, covering less grease, was delivered by Allied to the bank in New York, and the bank, in turn, delivered a $50,000 check to Allied's messenger for which it debited Rozel's account. On September 6, 1963 Allied's messenger delivered checks for the $50,000 and for the agreed compensation to Rozel. Both checks were deposited at the bank which, on October 21, 1963, delivered to Allied a delivery order addressed to Harbor Tank Storage, authorizing delivery of the collateral covered by the warehouse receipt to Allied.
Plaintiff asserts that the transactions described above constituted purchases and sales; Rozel contends that it made no purchase from or sale to Allied, although admitting that the loans were set up as "a fictitious purchase and sale" on their books and, apparently, on the books of Allied. Judge Matthews held that they were plainly loans and not sales, and we agree.
Plaintiff asserts that Rozel had the following contacts with New Jersey: "1. Numerous telephone calls from Allied in New Jersey to Rozel in New York. 2. Numerous telephone calls from Rozel in New York to Allied in New Jersey. 3. Letters from Rozel in New York to Allied in New Jersey. 4. Letters from Rozel in New York to Trans World Refining Corporation in New Jersey. 5. Receipt by Rozel of various warehouse receipts representing substantial quantities of agricultural products stored in New Jersey. 6. Mr. Nickelsberg, vice-president of Rozel resides in New Jersey. 7. Delivery order issued from New York to New Jersey directing use of the stored products. 8. Checks drawn on New Jersey bank and sent by Allied to Rozel." It is admitted that Rozel had no other contacts with New Jersey.
For New Jersey to exercise in personam jurisdiction over Rozel it is only necessary that defendant have "certain *349 minimum contacts" with this State "such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, 102 (1945). Those contacts which justify subjecting a foreign corporation to suit here must depend not on the quantity but "rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." Id., 326 U.S., at p. 319, 66 S.Ct., at p. 160, 90 L.Ed., at p. 104.
However, in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), Mr. Chief Justice Warren, speaking for the court, said:
"* * * it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456, 1459. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the `minimal contacts' with that State that are a prerequisite to its exercise of power over him. * * *." (357 U.S., at p. 251, 78 S.Ct., at p. 1238, 2 L.Ed.2d, at p. 1296)
"* * * The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. * * *." (357 U.S., at p. 253, 78 S.Ct., at p. 1239, 2 L.Ed.2d, at p. 1298)
Plaintiff argues that "Rozel purportedly had a security interest in the said commodities stored in the State of New Jersey" and this "caused Rozel to depend upon the laws of the State of New Jersey to adequately protect its interests." This alone, however, is not sufficient to meet the test laid down in Hanson v. Denckla (see Restatement 2d, Conflict of Laws, Proposed Official Draft, Part I, § 38, p. 207, § 51), for *350 here Rozel did not purposefully avail itself of the privilege of conducting activities here; nor did it invoke the benefits and protections of New Jersey law, although if the loan had not been paid, it might have done so.
The loan transaction was performed entirely in New York; the security, warehouse receipts, delivery orders and checks were all delivered there. The only thing that happened here was that Allied's agent in New Jersey called Rozel in New York to request a loan, and Rozel's agent responded. The telephone calls and letters from Rozel to Allied did not affect the above basics of the transaction nor give rise to jurisdiction. Webb v. Stanker and Galetto, Inc., 84 N.J. Super. 178 (App. Div.), certification denied 43 N.J. 263 (1964), certiorari denied 380 U.S. 907, 85 S.Ct. 888, 13 L.Ed.2d 795 (1965).
In Webb v. Stanker and Galetto, Inc., Stanker's agent went to Earth Mover's office in Delaware and arranged with Earth Movers to act as its subcontractor on a building project in Delaware. "Earth Movers prepared a writing setting forth the work to be done * * * and mailed it * * * to Stanker's office in Vineland, N.J. Stanker signed one copy `Accepted' and returned it, by mail, to Earth Movers. Earth Movers then did the work * * * and Stanker paid it $8,000 by checks mailed from Vineland." (84 N.J. Super., at p. 180)
In a third-party action by Stanker and Galetto against Earth Movers, arising out of an accident at the job site, this court affirmed the trial court's holding that Stanker failed to "`establish the necessary minimum contacts in New Jersey on the part of Earth Movers * * *.'" (at p. 182) Certainly, as in the case at bar, Earth Movers could have sued in New Jersey to protect its interests if the contract were not performed. But the suit was not by Earth Movers but against it, and the mere acceptance in New Jersey of the contract negotiated and to be performed in Delaware did not give our courts jurisdiction. Here, Rozel had no greater significant contact with New Jersey than did Earth Movers. The letters and telephone calls from Rozel to Allied, even though perhaps *351 more numerous than between Earth Movers and Stanker, were still merely incidental to the transactions which were and remained contracts negotiated and performed in New York. The nature of the transaction giving rise to the suit must be considered along with all other relationships between the defendant and the forum. Hanson v. Denckla, supra; Restatement 2d, Conflict of Laws, op. cit., p. 207. Here we find no significant contacts between the defendant and New Jersey.
Plaintiff argues that New Jersey is a convenient forum in which to entertain this action. Certainly convenience is a factor to consider, but it alone does not confer jurisdiction. Hanson v. Denckla, supra, 357 U.S., at p. 251, 78 S.Ct., at p. 1238, 2 L.Ed.2d, at p. 1296; Roland v. Modell's Shoppers World of Bergen Co., 92 N.J. Super. 1, 9 (App. Div. 1966).
Affirmed.