**COVENANT BANK FOR SAVINGS, Plaintiff,**

v.

**Brad COHEN, Larry Cohen, Bank Hapoalim and David Barr, Defendants.**

**Civ. A. No. 91–1817(SSB).**

United States District Court, D. New Jersey.

Nov. 10, 1992.

E. Hunter Taylor, Gerstein, Cohen, Taylor & Grayson, Haddonfield, N.J., for plaintiff.

J. Philip Kirchner, Kenney & Kearney, Cherry Hill, N.J., for defendants Bank Hapoalim and David Barr.

1. Covenant also made loans to Larry Cohen, who is named as a defendant in this suit. However, it appears from the record that service of

OPINION

BROTMAN, District Judge.

Presently before the court are motions brought by defendants Bank Hapoalim and David Barr to dismiss the complaint for lack of personal jurisdiction and to grant partial summary judgment. For the reasons set forth below, the court holds that an assertion of jurisdiction over these two defendants would be inconsistent with constitutional due process. Because of this holding, the court does not consider the motion for partial summary judgment.

## I.  Background and Procedure

The present dispute arises out of a series of loan transactions between plaintiff Covenant Bank for Savings ("Covenant") and defendant Brad Cohen in July 1989.[1] Covenant alleges that it made loans to Brad Cohen in the amount of $690,000. These loans were allegedly evidenced by promissory notes dated October 26, 1990. Covenant claims that Brad Cohen has defaulted on all of these loans and asks the court to award damages. By its opinion and order dated September 25, 1992, this court instructed the clerk of the court to enter a default against Brad Cohen, pursuant to Federal Rule of Civil Procedure 55(a), for failure to defend the present action.

Covenant has also stated claims against defendants Bank Hapoalim ("Hapoalim") and David Barr, a former employee of Hapoalim. In count four of the complaint, Covenant alleges fraud in that Hapoalim and Barr defendants drafted and provided Covenant with a false credit report concerning Brad Cohen. Count five sounds in negligence, alleging that defendants violated their duty of care in giving false credit information. Both claims arise from an alleged conversation in July 1989 between the plaintiff bank and Mr. Barr.

Plaintiff originally brought this action in New Jersey Superior Court. Defendants

process has never been made upon Larry Cohen.

removed the case to the United States District Court pursuant to 28 U.S.C. § 1441(a). Hapoalim and Mr. Barr currently have two motions pending before the court. First, they move to dismiss the claims against them on the ground that this forum lacks personal jurisdiction. Second, Hapoalim and Mr. Barr move the court to grant partial summary judgment in their favor on count five. Because the court concludes that defendants lack sufficient contacts with the forum state of New Jersey to support an assertion of personal jurisdiction, this opinion addresses only defendants' motion to dismiss.

For the purpose of determining the question of personal jurisdiction, the following facts are relevant.[2] Hapoalim is incorporated and has its principal place of business in Israel. Hapoalim also has branch offices in the states of New York, Pennsylvania, Massachusetts, Illinois, and California, as well as an agency located in Florida. Its Pennsylvania office is located in Philadelphia. Hapoalim does not maintain an office in New Jersey, nor is it registered to do business there. Hapoalim currently lends nearly $27 billion in loans worldwide, with about $1.76 billion in loans in the United States.

Hapoalim currently has approximately 41 loans outstanding to approximately 26 borrowers with New Jersey addresses. These loans amount to nearly $62 million, which equals 3.5 percent of Hapoalim's total American loan portfolio of $1.76 billion. None of these transactions with New Jersey residents was closed in New Jersey. Ten of the 26 New Jersey borrowers have secured their loans with real estate or personal property located in the state of New Jersey. Hapoalim employees come into the state of New Jersey "from time to time" for the purpose of meeting with New Jersey borrowers and examining collateral. Smith Aff. ¶ 12.

In September 1991, Hapoalim placed a one-quarter page advertisement in *The Jewish Community Voice*, a newspaper published by the Jewish Federation of Southern New Jersey and circulated solely within the state of New Jersey. The advertisement, which included Hapoalim's Philadelphia office address and telephone number, stated: "Israel's # 1 bank wishes you a Happy New Year." Def.'s Brief, exh. A. In April and June 1990, Hapoalim undertook a seven-day advertising campaign in *The Philadelphia Inquirer* for the purpose of soliciting time deposits from new customers. The campaign ran in the *Inquirer*'s business section, which defendants acknowledge is included in editions of the paper distributed in Southern New Jersey. Karr Aff. ¶ 6. However, defendants state, and plaintiff does not contest, that the *Inquirer* campaign did not target New Jersey customers and that Hapoalim was unaware at the time it initiated the campaign that the business section was distributed in Southern New Jersey.

Both Hapoalim and Mr. Barr allegedly had contact with New Jersey as a result of the events forming the basis of plaintiff's claim. Hapoalim, acting through Mr. Barr, communicated by telephone with plaintiff, a New Jersey bank, regarding the credit worthiness of Brad Cohen. This communication was initiated by Covenant. Compl. ¶ 25.

Mr. Barr is a resident of Pennsylvania who worked for Hapoalim in its Philadelphia office at the time of the communication with Covenant.[3] Mr. Barr travelled to New Jersey for meetings and to inspect

---

**2.** On October 18, 1991, this court stayed for 60 days its consideration of defendants' motion to dismiss for lack of personal jurisdiction in order to permit plaintiff to conduct discovery for the limited purpose of establishing jurisdiction. Plaintiff has not introduced further evidence on this issue. The court, therefore, will decide the question of personal jurisdiction based upon the papers and affidavits submitted by the parties prior to the October 18, 1992, order. *See* Affidavit of Jerome S. Smith (Senior Vice President of Hapoalim); Affidavit of James G. Bilderback

(Executive Vice President for Covenant); Affidavit of Martha S. Karr (Administrative Assistant and Public Relations Director of Hapoalim). The court is required to view the facts in a light most favorable to plaintiff. *Empire Abrasive Equipment Corp. v. H.H. Watson*, 567 F.2d 554, 556 (3d Cir.1977).

**3.** Mr. Barr no longer works for Covenant. Barr Aff. ¶ 2.

collateral in his capacity as an employee of Hapoalim.

## II. Discussion

Defendants ask this court to dismiss the claims against them for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiff bears the burden of proving the existence of "sufficient contacts between the defendant[s] and the forum state to support jurisdiction." *Provident National Bank v. California Federal Savings & Loan Association*, 819 F.2d 434, 437 (3d Cir.1987). This court may exercise personal jurisdiction over a party pursuant to New Jersey law and the Due Process clause. *Giangola v. Walt Disney World Co.*, 753 F.Supp. 148, 154 (D.N.J.1990). Because New Jersey extends its jurisdictional reach to the fullest limits permitted by the federal Constitution, the sole inquiry before this court is whether an assertion of personal jurisdiction over defendants Hapoalim and David Barr comports with constitutional due process. *Carteret Savings Bank, F.A. v. Shushan*, 954 F.2d 141, 144–45 (3d Cir. 1992), *cert. denied*, ⸻ U.S. ⸻, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992).

■ An assertion of personal jurisdiction satisfies due process when a nonresident defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). In determining what constitutes sufficient minimum contacts, the Supreme Court has distinguished between two forms of personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). First, specific jurisdiction exists "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum." *Id.* at 414, 104 S.Ct. at 1872. The critical issue here is

whether "the defendant's conduct and connection with the forum state is such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Second, general jurisdiction exists when there are sufficient contacts to justify an assertion of "personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9. "[M]ere minimum contacts," however, are not enough to establish general jurisdiction. *Provident National Bank*, 819 F.2d at 437. Rather, "[t]he nonresident's contacts to the forum must be continuous and substantial." *Id.*

### A. Specific Jurisdiction

■ The court considers first whether there is specific jurisdiction over Hapoalim and Mr. Barr. The underlying transaction which gives rise to plaintiff's claims against these defendants consists of a single inquiry, initiated by Covenant, directed to Mr. Barr at his office at Hapoalim in Philadelphia. There is no allegation that defendants solicited or initiated the contact with Covenant. Nor are there allegations of other contacts between defendants and the forum state that are connected to plaintiff's claims.

This single, unsolicited contact with a plaintiff located in New Jersey is not sufficient to justify an assertion of personal jurisdiction. The case law clearly establishes that a resident plaintiff's unilateral acts, directed to a nonresident defendant, do not create sufficient minimum contacts between the nonresident defendant and the forum, even where the plaintiff's claim arises out of these acts. *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 65 (3d Cir.1984); *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir.1982); *Baron & Co., Inc. v. Bank of New Jersey*, 497 F.Supp. 534, 537 (E.D.Pa. 1980).[4] Rather, "it is essential in each case

**4.** Covenant cites *Southeast Guaranty Trust Co.,*

*Ltd. v. Rodman & Renshaw*, 358 F.Supp. 1001,

that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Hapoalim and Mr. Barr responded to an unsolicited inquiry, initiated by Covenant, for information on the credit worthiness of Larry Cohen and Brad Cohen. Although the communication might have been tortious, it did not in any way represent a deliberate and purposeful contact with New Jersey.

Covenant attempts to establish minimum contacts based not on the telephone call itself but on the telephone call's impact in New Jersey. Covenant argues that the court may exercise personal jurisdiction " 'over non-residents in tort cases based upon a single deliberate contact with New Jersey where a contact resulted in the alleged injury.' " Pl.'s Brief at 9 (quoting *United States Golf Association v. U.S. Amateur Golf Association,* 690 F.Supp. 317, 320 (D.N.J.1988)).

■ It is true that due process is satisfied when a forum asserts jurisdiction over a defendant who undertakes affirmative acts which the defendant should reasonably foresee would lead to economic damages within the forum. *See Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (permitting personal jurisdiction over two nonresidents who wrote and edited allegedly libelous article in their capacity as employees of publication which was distributed in forum state); *see also Carteret Savings Bank,* 954 F.2d at 147–48. But the *Calder* "effects" test requires as a predicate for its application that the non-resident defendant purposefully and deliberately direct his act toward the forum state. Viewing the facts most favorably for the plaintiff, the court assumes that defendants' alleged act of misrepresentation was intentional. It is, however, necessary to distinguish between a defendant's acts which: (1) are aimed at a plaintiff who is located in the forum and (2) are aimed at the forum itself. In the first instance, defendant's actions, directed at the plaintiff, have only an unintended effect in the forum, such as economic damage. In the second instance, the defendant performs an act with "the very purpose of having an effect" in the forum. *Narco Avionics, Inc. v. Sportsman's Market, Inc.,* 792 F.Supp. 398, 408 (E.D.Pa.1992). Only the latter kind of intentional act constitutes a purposeful and deliberate contact with the forum which makes it fair and reasonable for the forum to exercise personal jurisdiction. In *Calder,* for example, the Supreme Court specifically found that the allegedly libelous actions "were expressly aimed at California" and not just at the plaintiff in that case.[5] 465 U.S. at 788, 104 S.Ct. at 14.

The present case clearly does not warrant a similar finding. Defendants' sole act was to respond to Covenant's unsolicited request for information. While defendants' response may have caused plaintiff damages in New Jersey, defendants did not perform this act with the "very purpose" of having such an impact in New Jersey. Accordingly, the *Calder* "effects" test does not apply.

### B. General Jurisdiction

■ The court next addresses whether defendants are subject to general jurisdic-

---

1009 (N.D.Ill.1973), for the proposition that a misrepresentation, communicated by a nonresident defendant during a single telephone call initiated by a resident plaintiff, is a sufficient contact to confer jurisdiction. Pl.'s Brief at 10. The court finds *Southeast Guaranty Trust* on point, but refuses to follow its holding because it is incompatible with more recent Third Circuit law.

**5.** The court in *Narco Avionics* summarized these contacts as follows:

> In *Calder,* the author solicited information from sources in California for use in the article, and thus appears to have had minimum forum contacts related to the subject of the litigation. Further, defendants knew that a substantial percentage of each edition of this publication was circulated in California. Thus, defendants knew that they were respectively writing and editing, as well as overseeing production and distribution of, an article defaming a Californian which was predestined in large part for circulation in California.

792 F.Supp. at 407.

tion in New Jersey. General jurisdiction results from a defendant's contacts with a forum which are unrelated to the events forming the basis of the cause of action. An assertion of general jurisdiction is consistent with due process only when the plaintiff has satisfied the "rigorous" burden of establishing that the nonresident defendant maintains continuous and systematic contacts with the forum state. *Giangola*, 753 F.Supp. at 154.

■ Mr. Barr cannot be subject to general jurisdiction. Plaintiff makes no allegations that Mr. Barr has any contacts with New Jersey other than in his corporate capacity with Hapoalim. Nor does Covenant allege that Mr. Barr, in his present position at another bank in Philadelphia, engages in any business-related activities in New Jersey. The court finds that these contacts with New Jersey are not systematic and continuous. Personal jurisdiction may, therefore, not be exercised over Mr. Barr.[6]

■ Hapoalim's contacts with New Jersey also fail to justify general jurisdiction. Hapoalim is not registered to do business in New Jersey and does not maintain an office or employ workers in the state. Hapoalim's contacts are of two kinds. First, it lends money to New Jersey residents. These loans are secured by real or personal property located in New Jersey, and Hapoalim employees travel into the state from time to time to examine this collateral. Second, Hapoalim has placed advertisements in newspapers which are distributed in New Jersey.[7]

■ It is now well established that a defendant's advertisements seeking business in a forum state, standing alone, do not comprise sufficient contacts with the forum state to justify an assertion of general jurisdiction. *Time Share Vacation*

*Club*, 735 F.2d at 66 n. 8; *Reliance Steel Products*, 675 F.2d at 589; *Scheidt v. Young*, 389 F.2d 58, 60 (3d Cir.1968); *Giangola*, 753 F.Supp. at 155. In addition, the mere holding of a security interest in collateral located in New Jersey is insufficient to confer jurisdiction over a nonresident defendant. *DeLear v. Rozel Packing Corp.*, 95 N.J.Super. 344, 349–50, 231 A.2d 232 (App.Div.1967). It remains, however, for the court to determine whether advertisements and security interests, when weighed together with the "time-to-time" business trips to New Jersey made by Hapoalim employees, rise to the level of systematic and continuous contacts. The court holds that they do not.

The reasoning of a recent Third Circuit case supports this conclusion. In *Provident National Bank v. California Federal Savings & Loan Association*, 819 F.2d 434, 435 (3d Cir.1987), the court addressed the "not uncommon question of how much contact a modern lending institution must have within the forum state to confer *in personam* jurisdiction." At first glance, the contacts between the defendant in *Provident National Bank*, California Federal Savings & Loan Association ("California Federal"), and the forum state of Pennsylvania are similar to the contacts in the case at bar. California Federal was not registered to do business in Pennsylvania. Nor did it maintain offices, employees, agents, mailing address, or telephone numbers, or pay taxes or run advertisements there. *Id.* at 436. Between 700 and 1000 of California Federal's depositors resided in Pennsylvania and contributed about $10 million of the bank's total of $14 billion in deposits. About $10 million of California Federal's $12 billion in outstanding loans were made to Pennsylvania residents. *Id.* This court reads *Provident National Bank* as holding that these

---

6. The court also notes that Mr. Barr's contacts with New Jersey performed in his corporate capacity for Hapoalim or for his present employer may fall under the "corporate shield" doctrine, which protects such a nonresident employee from being subject to personal jurisdiction in a forum state. *See Forum Publications, Inc. v. P.T. Publishers, Inc.*, 700 F.Supp. 236, 245–46 (E.D.Pa.1988).

7. The parties dispute whether Hapoalim placed the advertisement in *The Jewish Community Voice* for business or philanthropic purposes. For the purposes of this motion, the court resolves the issue in favor of Covenant, and assumes that the advertisement was commercial.

contacts, relating to the "bread and butter" of a bank's daily business, were necessary but not sufficient for the assertion of general jurisdiction. *Id.* at 438. While these contacts were substantial, the Third Circuit looked primarily to the quality, not quantity, of defendant's connections to the forum. Indeed, the critical contact was a "controlled disbursement account" which California Federal maintained with a Pennsylvania bank and through which California Federal conducted transactions every business day. "This daily contact," the court concluded, "was a continuous and central part of California Federal's business" and provided the basis for an assertion of general jurisdiction. *Id.*

Based on the analysis of *Provident National Bank*, this court cannot find general jurisdiction in the present case. The record shows that Hapoalim directed its activities toward New Jersey only on an irregular basis. The two advertisements which reached New Jersey were short-lived and were separated in time by approximately 14 months. Hapoalim serviced its loans to New Jersey customers with only periodic contacts to New Jersey.[8] In sum, there is no evidence that Hapoalim, as a continuous and central part of its business, engages in daily or even regular[9] contact with the forum state of New Jersey. The court is, therefore, unable to conclude that Hapoalim's contacts could lead it to reasonably anticipate being haled into court in New Jersey. There is no basis for general jurisdiction.

## III.  Conclusion

The twin engines driving the law of personal jurisdiction are sovereignty and fairness. First, the due process clause promotes "fair play and substantial justice" by preventing "a state of a plaintiff's choosing from coercing defense of a suit in a forum which, because of its remoteness from de-fendant's residence and from witnesses and proof, would be fundamentally unfair." *Empire Abrasive Equipment,* 567 F.2d at 557 (quoting *Jonnet v. Dollar Savings Bank of New York,* 530 F.2d 1123, 1140 (3d Cir.1976) (Gibbons, J., concurring)); *see also Asahi Metal Industry v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (assertion of personal jurisdiction over overseas defendant would be burdensome, and therefore unreasonable and unfair). Second, "out of respect for values of federalism, the due process clause ... forbid[s] a state to exercise its adjudicatory authority in a manner that would encroach upon the sovereignty of a sister state." *Empire Abrasive Equipment,* 567 F.2d at 557 (quoting *Jonnet,* 530 F.2d at 1140).

It would be difficult for this court to conclude that any unfairness would result in adjudicating this case in the district court in Camden, New Jersey, rather than in Philadelphia, Pennsylvania. But the twin due process limitations of fairness and sovereignty "interact conjunctively," *id.* (quoting *Jonnet,* 530 F.2d at 1140), and the Supreme Court has recently reaffirmed the importance of territoriality to personal jurisdiction doctrine. *See Burnham v. Superior Court,* 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (state has power, consistent with due process, to exercise jurisdiction over nonresident defendant who is served with process while temporarily in state in a suit unrelated to defendant's activities in the state). Both Pennsylvania and New Jersey have an interest in preventing banks and their employees from providing false credit information. But defendants' presence in Pennsylvania and their lack of sufficient contacts with New Jersey indicate that the former state has the greater interest in deciding this case. Thus, the territorial limitation on personal jurisdiction embodied in constitu-

---

**8.** In contrast, California Federal used three forum state banks to service loans to forum state residents. *Provident National Bank,* 819 F.2d at 436.

**9.** *Provident National Bank* does not require daily contacts for there to be general jurisdiction. Rather, there must be a substantial level of regular, purposeful contact directed to the forum. Under the facts of the present case, the court holds only that this standard is not satisfied by the presence in the forum state of bank customers who do not receive regular and substantial servicing within the forum.

tional due process requires this court to refrain from exercising jurisdiction over Hapoalim and Mr. Barr. Accordingly, defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is granted and Covenant's claims against defendants Hapoalim and David Barr are dismissed without prejudice. The court does not reach defendants' motion for partial summary judgment.