**Frederick BURKE, Plaintiff,**

v.

**Ike QUARTEY, Ringcraft Promotions & Management Syndicate, and Michel Acaries, Defendants.**

Civil Action No. 96–576.

United States District Court, D. New Jersey.

July 7, 1997.

923

Melvin S. Narol, Pellettieri, Rabstein, and Altman, Princeton, NJ, for Plaintiff.

John M. Bosco, Bosco, Bisignano, Mascolo, Newark, NJ, for Defendants Ike Quartey and Michel Acaries.

## OPINION

BROTMAN, District Judge.

The court reviews herein "Round Two" of a dispute between an American boxing manager in one corner and a Ghanaian boxer, a French boxing manager, and a French boxing management and promotion company in the other. Presently before the court is Defendant Ike Quartey's motion to quash the service of process and to dismiss the complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). In the alternative, Quartey requests that the court dismiss the action pursuant to the doctrine of forum non conveniens.[1] For the reasons set forth below, the court denies both of these motions.

## I. BACKGROUND

In 1989, defendant Ike Quartey—a Ghanaian boxer—entered into a management agreement with Ghanaian manager Emmanuel Seth Yoofi Bohan. Bohan, in turn, entered into a co–management agreement with plaintiff Frederick Burke, a boxing manager from Maryland. According to the terms of the co–management agreement, Burke was to receive a designated percentage of Quartey's

1. Acaries filed a separate Meotion to Quash Service of Process and Motion to Dismiss for Lack of Personal Jurisdiction and Pursuant to the Doctrine of Forum Non Conveniens. This court denied the Motion to Quash Service of Process on April 28, 1997 and granted the Motion to Dismiss for Lack of Personal Jurisdiction on June 23, 1997.

With respect to Defendant Quartey's Motion to Quash Service of Process, the court finds that this contention lacks merit. On September 26, 1996, a United States Marshal served Defendant Quartey with the summons and complaint in this matter. Plaintiff thereby effected personal service on this defendant consistent with Fed. R.Civ.P. 4(e)(2), which permits service to be made by personal service on the defendant.

total earnings. Quartey consented to this agreement.

In 1991, Quartey fired Burke and hired a new manager. Since that time, the defendant has boxed in the United States on at least four occasions. (*See* Cert. of Frederick Burke ¶ 8.) Both parties concede that the one of those fights was in Atlantic City, New Jersey. (*See id* ¶ 11; *see also* Aff. of Angelika C. Moncada ¶ 11.) In February 1996, Burke filed suit against Quartey, Michel Acaries, and Ringcraft Promotions & Management Syndicate, alleging that he is entitled to the percentage of Quartey's earnings due under the contract.

■ In the present motion, Quartey asserts that the court cannot exercise jurisdiction over him because his contacts with New Jersey do not satisfy the "minimum contacts" test for personal jurisdiction over a foreign defendant. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The plaintiff now bears the burden of establishing a prima facie case of jurisdiction. *Bryan v. Associated Container Transp.*, 837 F.Supp. 633, 639–40 (D.N.J. 1993). To meet this burden, he may not rely on bare pleadings, but must produce competent evidence to establish "with reasonable particularity" the nature and extent of the defendant's contacts with the forum state. *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir.1990). If plaintiff meets this burden, the motion to dismiss will be denied regardless of any controverting presentation by the defendant.

## II. DISCUSSION: PERSONAL JURISDICTION

■ Pursuant to Fed.R.Civ.P. 4(e), this court may exercise personal jurisdiction over the defendant to the extent allowed by state law. New Jersey's long arm statute authorizes the exercise of jurisdiction over nonresidents as permissible by the Fourteenth Amendment Due Process Clause. *Telesis Mergers & Acquisitions, Inc. v. Atlis Fed. Servs., Inc.*, 918 F.Supp. 823, 830 (D.N.J. 1996). Without evidence of personal service of process in New Jersey, the Due Process Clause prevents exercise of jurisdiction over the defendant unless sufficient minimum con-

tacts exist between Defendant Quartey and this state such that exercising jurisdiction over him does not violate "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. What constitutes minimum contacts varies with the "quality and nature of the defendant's activity." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Plaintiff must demonstrate that Defendant Quartey's contacts with New Jersey were such that he should have reasonably anticipated the possibility of being haled into court in this state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–74, 105 S.Ct. 2174, 2181–83, 85 L.Ed.2d 528 (1985).

■ The Supreme Court has delineated two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction finds minimum contacts from an ongoing series of contacts with the forum state, while specific jurisdiction does so on the basis of one substantial contact from which the cause of action arises. *See id.* Due process concerns are satisfied if the exercise of jurisdiction is objectively foreseeable to the foreign defendant. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In the case of specific jurisdiction, the action is foreseeable if two conditions are met: (1) the litigation arises out of in–state activities, and (2) the defendant purposefully directed his activities at the forum state. *See Burger King*, 471 U.S. at 472, 105 S.Ct. at 2181–82 (citations omitted). Thus, the plaintiff must show that the defendant had at least one contact with New Jersey and that the cause of action arose out of that contact. In this case, the plaintiff contends that the court has specific jurisdiction over Quartey due to his participation in a title defense fight in Atlantic City, New Jersey. (*See* Pl.'s Br. at 4–9.) Plaintiff alleges further that the failure to pay him after the New Jersey boxing match constituted a breach of contract in New Jersey. This, plaintiff concludes, establishes the necessary minimum contacts for this court to

exercise specific jurisdiction over the defendant.

■ For the purposes of determining minimum contacts, the Supreme Court has specifically turned the focus away from theoretical analyses. *See Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185 (citation omitted) (jurisdiction not measured according to "conceptualistic theories of the place of contracting or of performance"). That is, in performing a minimum contacts analysis, courts should not engage in doctrinal analyses to determine the place of performance or breach. Rather, they should consider the actual activities of the parties and to which *fora* those activities are connected. *See Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.,* 75 F.3d 147, 151 (3d Cir.1996) (minimum contacts analysis in breach of contract action focuses on prior negotiations, future consequences, course of dealing).

### A. The action arose out of the defendant's contacts with New Jersey

■ In this case, specific jurisdiction exists because "future consequences" of the contract took place in New Jersey. *See id.* The defendant inappropriately uses "conceptualistic" contract theory to argue that minimum contacts with New Jersey do not exist. That is, defendant contends that the doctrine of anticipatory repudiation places the breach at an earlier time and in another forum— Ghana. While the defendant may have indicated his intent to breach the contract in Ghana—and for purposes of an anticipatory repudiation analysis that fact would be significant—this is not significant for a minimum contacts analysis which focuses exclusively on factual occurrences, prior negotiations, and future consequences in particular. *See id.*

Here, the occurrence of the fight and the prospect of payment are the essence of the contract's "future consequences." *See Burg-*

*er King,* 471 U.S. at 479, 105 S.Ct. at 2185–86; *Vetrotex,* 75 F.3d at 151. According to the contract, Quartey would perform (i.e., pay Burke) upon the occurrence of a condition (i.e., boxing for money). (*See* Cert. of Frederick Burke, Ex. B.) Viewing the facts in the light most favorable to the plaintiff, the breach occurred when the Quartey failed to perform (pay Burke) on the occurrence of a condition (the fight). The condition—the fight—occurred in New Jersey, and failure to perform subsequently constitutes the breach. The breach, in turn, gives rise to this action; thus, this action arises out of a contact with New Jersey.

The defendant argues in error that Ghana, not New Jersey, has personal jurisdiction over this action because the prior negotiations to the contract occurred in Ghana. (*See* Def.'s Reply at 6.) The "minimum contacts" standard, however, is not a "best contacts" standard. *See World–Wide,* 444 U.S. at 301, 100 S.Ct. at 582 (Brennan, J., dissenting). A viable argument supporting jurisdiction in Ghana does not diminish jurisdiction in New Jersey. Under *Burger King* and subsequent cases, prior negotiations and future consequences are *both* compelling evidence of minimum contacts. *See Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185–86; *Vetrotex,* 75 F.3d at 151; *Telesis,* 918 F.Supp. at 823.[2]

■ The defendant also asserts that choice–of–law issues prevent this court from exercising jurisdiction, and that Ghanaian or French law may apply to this action. Choice–of–law issues, however, should not be factored into a jurisdictional analysis. *See Burger King,* 471 U.S. at 481–82, 105 S.Ct. at 2186–87; *see also Hanson,* 357 U.S. at 253–54, 78 S.Ct. at 1239–40. *Burger King* instructs the court to consider the weight of factual material regardless of conceptual analyses. *See Burger King,* 471 U.S. at 479,

---

2. The sufficiency of the defendant's contact with New Jersey is especially apparent in light of his related activities in other States. The Supreme Court has recognized that, even if contacts are marginal in the forum state, they can rise to a level of sufficiency when the same activity giving rise to the cause of action is being repeated in other states. *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 779–80, 104 S.Ct. 1473,

1480–81, 79 L.Ed.2d 790 (1984). In this case, Quarter's breach is one of a series of breaches arising out of the same contract. *Cf. id.* (allowing personal jurisdiction despite minimal in–state activity because part of larger pattern of activity in any other states). More important, Quartey was personally present in New Jersey and arguably committed a breach here.

105 S.Ct. at 2185–86. Thus, choice–of–law issues do not diminish the weight of factual considerations about Quartey's acts in New Jersey in alleged breach of the contract.

## B. The defendant purposefully availed himself of the benefits of doing business in New Jersey

■ The court must also consider whether the defendant has purposefully obtained a benefit from doing business in the forum state—here, New Jersey—such that he would expect protection under New Jersey law. When a defendant "manifestly has availed himself of the privilege of conducting business [within the forum state], and his activities are shielded by the 'benefits and protections' of the forum's laws, it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." See Telesis, 918 F.Supp. at 823 (citing Burger King, 471 U.S. at 475–76, 105 S.Ct. at 2183–84). Compare Keeton, 465 U.S. at 779, 104 S.Ct. at 1480–81 (charging defendant with knowledge of its laws where it "no doubt would have claimed the benefit of them if it had a complaint against a subscriber, distributor, or other commercial partner") (emphasis added) with Covenant Bank for Sav. v. Cohen, 806 F.Supp. 52 (D.N.J.1992) (no personal jurisdiction where defendant merely transmitted information into forum but did not obtain benefit and corresponding protection under New Jersey laws).

The plaintiff asserts specific jurisdiction on the basis of Quartey's title defense fight in New Jersey. Both Plaintiff and Defendant present evidence which acknowledges that Quartey participated in this event. (See Cert. of Daniel Sweetser, Ex. A, Aff. of Angelika C. Moncada ¶ 11.) Thus, the defendant purposefully availed himself of the opportunity to box professionally in New Jersey. This was not simply a unilateral act without tangible benefits. Cf. Covenant Bank, 806 F.Supp. at 52. Rather, Quartey fought in a professional boxing match in New Jersey in exchange for money. He received a benefit specifically from his promoter, New Jersey Sports Productions, Inc., a New Jersey corporation. (See Aff. of Angelika C. Moncada ¶¶ 11–12).[3] In obtaining this benefit, he also availed himself of the protections of New Jersey law. If he had not received payment, Quartey no doubt would claim that the laws of New Jersey entitle him to redress. Cf. Keeton, 465 U.S. at 779, 104 S.Ct. at 1480–81.

## C. Burke's status as a nonresident plaintiff does not diminish personal jurisdiction over Quartey

■ Defendant asserts that jurisdiction is inappropriate in New Jersey since the plaintiff is not a New Jersey resident. (See Def.'s Brief at 6, Def.'s Reply at 8–9.) This is a misinterpretation of applicable case law. A court properly exercises jurisdiction as long as the state has an interest in adjudicating the claim. See McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Keeton, 465 U.S. at 770, 104 S.Ct. at 1475–76. While in many cases, courts focus on the plaintiff's status as a resident of the forum state, see McGee, 355 U.S. at 220, 78 S.Ct. at 200, the plaintiff's residency is just one way of showing that the forum state has all interest in hearing the claim. See id. at 223, 78 S.Ct. at 201 (providing that forum state may have interest in "providing effective means of redress for its residents"). While residency can trigger the exercise of jurisdiction, it is not the only interest which can do so.[4]

In this case, several New Jersey statutes evidence that New Jersey has an interest in

---

3. Moreover, plaintiff's evidence suggests that the money exchanged was significant: the Atlantic City Convention Center was sold–out, the fight was a championship match, and Quartey was fighting on an undercard for one of the world's most successful and popular boxers. (See Cert. of Daniel Sweetser, Ex. A.)

4. In Keeton, for example, the Court specified that "the plaintiff's residence in the forum state is not a separate requirement" for jurisdiction. See Keeton, 465 U.S. at 780, 104 S.Ct. at 1481. Notably, the Court upheld New Hampshire's jurisdiction in a case where neither plaintiff nor defendant were from New Hampshire. See id. To so hold, the Court identified a state interest through an analysis of certain New Hampshire statutes. See id. at 777, 104 S.Ct. at 1479–80 (citing New Hampshire statutes).

hearing this claim. For instance, the Legislature has provided for the regulation of boxing through the State Athletic Control Board (hereinafter "Board"). *See* N.J. Stat. Ann. § 5:2A (West 1996).[5] Further, the Legislature has specifically expressed all interest in providing a remedy for wrongdoings between parties to boxing agreements. *See id.* § 5:2A–17(c)(4) ("The Board may ... order any person found to have violated any provision of this act or any regulation made pursuant thereto to restore to any person aggrieved by an unlawful act or practice, any moneys or property, real or personal, acquired by means of that act or practice. . . ."). The State's Administrative Code also demonstrates the state's interest in promoting fair dealing in boxing proceedings. *See* N.J. Admin. Code tit. 13, § 46–5.11 (1997) (guaranteeing payment of boxer by promoter); *id.* § 46–6.4(b) (guaranteeing manager's entitlement to payment even if boxer fights without manager's consent). Importantly, the state interest includes a concern about boxers who fail to pay their managers. *See id.* Together, these statutes reflect a legislative policy of maintaining equitable dealings and conduct within New Jersey's boxing industry.

The defendant argues that this policy does not extend to the plaintiff because Burke was not registered as a manager with the Board at the time of Quartey's fight in Atlantic City. The technicalities of Burke's status with the Board, however, do not diminish New Jersey's expressed interest in maintaining fairness in the boxing industry. The licensing requirement was intended to prevent parties from conducting boxing matches in contravention of Board regulations and to prevent boxing matches from occurring un-

der situations which are dangerous to the health of the boxer.[6] *See* Interim Report and Recommendations of the State of New Jersey Commission of Investigation on the Inadequate Regulation of Boxing (March 1, 1984), at 1.[7] For the purposes of this motion, New Jersey's interest in the dispute is clear regardless of plaintiff's status vis-a-vis the Board. Denying relief on the basis of this technicality would unduly protect a boxer who fought without informing his manager. This result would permit the very situation which the Legislature intended to prevent. *See* N.J. Stat. Ann. § 5:2A–17(c)(4). Thus, the Plaintiff correctly asserts that New Jersey has a state interest in hearing his claim.

### D. Exercise of jurisdiction comports with notions of fair play and substantial justice

After analyzing minimum contacts, a court must also consider whether exercising jurisdiction over the defendant would violate traditional notions of "fair play and substantial justice." *International Shoe*, 326 U.S. at 310, 66 S.Ct. at 154–55; *Vetrotex*, 75 F.3d at 147. Considerations of fair play and substantial justice may justify denying jurisdiction even where minimum contacts exist. *See Vetrotex*, 75 F.3d at 147. To that end, a court may not exercise jurisdiction in such a way as to make litigation " 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' to his opponent." *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185 (citations omitted). A defendant who has minimum contacts within the forum state can be excused from jurisdiction if he will "for all intents and purposes be deprived of his day in court." *See Burger King*, 471 U.S. at 486, 105 S.Ct. at 2189 (citation omitted).[8]

---

**5.** The express legislative purpose of the boxing statutes is to "promote the public confidence and trust in the regulatory process and the conduct of boxing. . . ." *Id.* The legislation reiterates this focus on the integrity of boxing–related conduct: "The board shall not grant a license to any person who does not possess good character, honesty, integrity, and responsibility." *Id.* § 5:2A–15.

**6.** *See* N.J. Admin. Code tit. 13, § 46–4.1 ("No person ... shall hold conduct, or participate in boxing bouts ... in the State of New Jersey

without first having obtained a license from the Board.").

**7.** This report was conducted in 1984, and it was immediately followed by vast changes to the New Jersey boxing statutes in 1985. The changes created the State Athletic Control Board which controls boxing licensing today.

**8.** That is, if appearing to defend the litigation is so difficult that a defendant will be forced to accept a default judgment against him, then fair play and substantial justice would call for dismissal of the action.

Quartey does not fall within this exception. Quartey's repeated appearances throughout the United States—including his lucrative appearance in New Jersey—demonstrate that the prospect of traveling long distances frequently to this country is not "gravely difficult." *See Burger King* at 478, 105 S.Ct. at 2185; *see also* Cert. of Daniel Sweetser, Ex. A–B; Supplementary Cert. of Daniel Sweetser, Ex. B. While possibly somewhat inconvenient for Quartey, traveling to New Jersey is not such an intrusion on fair play and substantial justice so as to excuse Quartey from answering his obligations in New Jersey.

Defendant contends that the exercise of jurisdiction is unfair because a number of prospective witnesses reside in other countries. The cost of transporting these witnesses to New Jersey will be high, defendant argues, and counsels against the exercise of jurisdiction. (*See* Aff. of Ike Quartey.) In light of all facts before the court, this argument fails. First, by entering New Jersey and purposefully availing himself of the benefits of conducting business here, the defendant is charged with foreseeing the possibility of litigation here. *See World–Wide,* 444 U.S. at 297–98, 100 S.Ct. at 567–68. This includes the presentation of witnesses. Defendant cannot complain when the foreseeable possibility of litigation becomes a reality. Second, while the wealth of the defendant alone cannot support the assertion of jurisdiction, *see Burger King,* 471 U.S. at 483 n. 25, 105 S.Ct. at 2188 n. 25, when the disparity of wealth between the two parties is so great that the defendant will be "judgment proof" were the court to deny jurisdiction, the court may constitutionally exercise jurisdiction. *McGee,* 355 U.S. at 223, 78 S.Ct. at 201; *see also Burger King,* 471 U.S. at 483 n. 25, 105 S.Ct. at 2188 n. 25. In this case, it contradicts fairness to label as "burdensome" Quartey's litigation expenses when Quartey has retained at least $1.5 million which the plaintiff alleges belong to him. (*See* Cert. of Frederick Burke, Ex. A–B; Supplementary Cert. of Daniel Sweetser, Ex. B.) Indeed, if the plaintiff has no financial resources to travel to Ghana, this defendant will become judgment-proof This is the exact result which

*McGee* urges the court to prevent. *See McGee,* 355 U.S. at 223, 78 S.Ct. at 201.

Finally, the court must also consider the plaintiffs interest in obtaining convenient and effective relief *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184–85. In doing so, the court may "establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* In this case, the plaintiff not only has established minimum contacts, but also has demonstrated a need for convenient and effective relief. In light of the defendant's apparent financial ability to answer suit in this state; his demonstrated ability to travel frequently in general and to travel to New Jersey in particular; his purposeful availment of the benefit of doing business in New Jersey; and his possession of all the proceeds of his alleged contract with Burke, the court concludes that considerations of fair play and substantial justice do not weigh against the assertion of jurisdiction over Quartey.

### III. DISCUSSION: FORUM NON CONVENIENS

In the alternative, the defendant moves for dismissal under the doctrine of forum non conveniens. That doctrine permits the court to dismiss an action when an adequate alternative forum exists and when litigation in the chosen forum will cause "oppression and vexation to the defendant out of all proportion to the plaintiff's convenience." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981). The doctrine "must be sparingly applied, inasmuch as its application results in the dismissal of an action over which the court has jurisdiction and ordinarily would have a duty to resolve." *American Cyanamid Co. v. Picaso–Anstalt,* 741 F.Supp. 1150 (D.N.J.1990) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)). Substantial weight and deference is given to the plaintiff's choice of forum. *See Gulf Oil* 330 U.S. at 508, 67 S.Ct. at 843.

Where, as here, the plaintiff—a citizen of Maryland—is "foreign" to this forum, his choice may deserve less deference "be-

cause it may be less reasonable to assume that a venue which is not the plaintiff's home forum is convenient." *Lony v. E.I. DuPont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir.1991) (*Lony II*) (citations omitted). The reluctance to assume that the foreign plaintiff chose the forum in the interest of convenience, however, "can readily be overcome by a strong showing of convenience." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 179 (3d Cir.1991) (*Lacey II*). In the context of an international dispute, an American citizen does not have an absolute right to maintain an action in this country; however, "his election of [an appropriate U.S. forum] should not be disregarded in the absence of persuasive evidence that the retention of jurisdiction will result in manifest injustice to the defendant." *Hoffman v. Goberman*, 420 F.2d 423, 428 (3d Cir.1970); *American Cyanamid*, 741 F.Supp. at 1155. Thus, even where the court affords less deference to the "foreign" plaintiff's choice of forum, it remains the defendant's burden to show by a strong preponderance the convenience of the alternative forum. *Mediterranean Golf, Inc. v. Hirsh*, 783 F.Supp. 835, 842 (D.N.J.1991).

██ The defendant argues that the presumption in favor of plaintiff's choice of forum does not apply to Burke because Burke is not litigating in his home forum. Thus, Quartey contends, New Jersey has no vested interest in the plaintiff as there is no relationship between the forum and the litigation. This argument fails for two reasons. First, it is reasonable to assume that this forum is convenient for the plaintiff in light of the regional proximity between his home state, Maryland, and New Jersey. *See Gear v. Constantinescu*, 741 F.Supp. 525, 527 (D.N.J.1990) (using geographical proximity between fora to measure convenience in forum non conveniens analysis). Therefore, it is also unreasonable to conclude that the plaintiff chose this forum to vex, harass, or oppress the defendant. *See Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843. Second, New Jersey has a clear interest in hearing this claim, as explained *supra* with respect to minimum contacts, despite that plaintiff is not a New Jersey resident. Thus, plaintiff's choice of forum deserves deference and weighs significantly against dismissal.

With this backdrop, the court considers the defendant's forum non conveniens argument. In so doing, the court notes that a forum non conveniens analysis contains two steps: first, the court determines whether an adequate alternative forum exists; second, the court balances the public and private interest factors which weigh for and against each forum. *See Lacey II*, 932 F.2d at 170. Private interest factors include

a) relative ease of access to sources of proof

b) availability of compulsory process for attendance of unwilling witnesses

c) costs of obtaining witnesses, and

d) practical considerations that make trial of a case easy, expeditious, and inexpensive.

Public interest factors include

a) administrative difficulties flowing from court congestion

b) the interest in having local disputes resolved at home

c) the interest in having a case tried in the district which is familiar with applicable laws

d) avoidance of unnecessary problems in conflicts of laws, and

e) the unfairness of imposing jury duty upon a community with no relationship to the litigation.

*See Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843. The defendant bears a heavy burden to satisfy both components of the analysis and must establish a strong preponderance in favor of dismissal. *See Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43–44 (3d Cir.1988) (*Lacey I*).

### A. Adequate Alternative Forum

██ Defendant proposes Ghana and France as adequate, alternative fora for plaintiff's action, asserting that he would be amenable to process in one of those fora and that both provide for compulsory process with respect to sources of proof.[9] (Def.'s Br.

---

9. In arguing that "[a]t least one of the defendants is amenable to process in each forum," (Def.'s Br. at 12), Quartey implicitly refers to his co-defendant, Michel Acaries.

at 12.) To satisfy the adequacy requirement, however, the defendant must establish not only that he is amenable to process in the foreign forum, but also that the foreign forum provides the plaintiff the opportunity for appropriate redress. *Derensis v. Coopers & Lybrand Chartered Accountants,* 930 F.Supp. 1003, 1006–07 (D.N.J.1996). *Accord Lacey II,* 932 F.2d at 180 (alternative forum inadequate if offers clearly unsatisfactory remedy).

■ Defendant offers no affidavits or other record evidence to show that Ghanaian or French law would permit recovery for the claims plaintiff purports to state in his complaint.[10] In fact, the defendant suggests the opposite by representing that a claim similar to plaintiff's, brought previously in Ghana, "was dismissed with prejudice in that jurisdiction." (Def.'s Br. at 12.) Even assuming, *arguendo,* that Ghanaian law permitted recovery but that the Ghanaian claim was dismissed on other grounds, this does not cure defendant's error in failing to support with record evidence the "adequate alternative forum" component of the forum non conveniens claim. *Compare Nieminen v. Breeze–Eastern,* 736 F.Supp. 580, 583 (D.N.J.1990) (refusing to dismiss where defendant does not support with record evidence assertion in brief that Finland recognizes tort law) *with Mediterranean Golf,* 783 F.Supp. at 841 (dismissing on forum non conveniens grounds where defendant's affidavits show French law permits recovery for claims in complaint).

### B. Private and Public Interest Factors

■ To show that the private factors weigh heavily in favor of dismissal, defendant proffers evidence to support several arguments. First, Quartey contends that he would require access to at least one witness in Ghana and at least three witnesses in France to defend against plaintiff's allegations. (Quartey Aff. ¶¶ 4–5.) These witnesses and other documents necessary for his defense are beyond this court's power for compulsory service of process or production. (*Id.* ¶¶ 4–6.) In addition, Quartey argues that a trial in New Jersey would not be easy, expeditious, or inexpensive, as he would incur substantial costs for himself and prospective witnesses traveling from abroad. (*Id.* ¶¶ 2, 5–6.) Finally, the defendant states that he does not own property in New Jersey; therefore, a judgment against him "would have no immediate effect." (*Id.* ¶ 9: Def.'s Br. at 9.)

These private interest factors supporting dismissal do not overcome the strong presumption in favor of the plaintiff's choice of forum. Sources of proof and potential witnesses exist both in this country and in Ghana: the contract was formed in Maryland and Ghana but the damages arose in New Jersey. (*See* Cert. of Frederick Burke; Cert. of Daniel Sweetser.) Thus, the plaintiff's inconvenience to litigate abroad is roughly equal to the defendant's inconvenience to litigate in New Jersey. The cost of litigation will be significant for each party, no matter which jurisdiction hears this case. As a result, while a number of legitimate factors show that adjudication abroad might be more convenient for the defendant, these factors are not "out of all proportion with the plaintiff's convenience." *Piper,* 454 U.S. at 241, 102 S.Ct. at 258. Moreover, when a defendant has purposefully availed himself of the benefits of doing business in New Jersey, he "cannot be heard to complain about the burdens of litigating this action in New Jersey." *Kultur Intern. Films Ltd. v. Covent Garden Pioneer,* 860 F.Supp. 1055, 1066 (D.N.J. 1994).

The defendant erroneously cites *Kultur Intern. Films* to argue that the unavailability

---

**10.** The Affidavit of Issifu Quartelai "Ike" Quartey (hereinafter "Quartey Aff.") does not attest to the adequacy of the proposed alternative fora; rather, it sets forth the names and proposed testimony of witnesses in Ghana and France and states that these witnesses would be beyond this Court's power for compulsory service of process. Thus, the Quartey affidavit supports that part of the forum non conveniens analysis that involves a balancing test of public and private factors.

The Affidavit of Atef El Khoury also does not help defendant fulfill his burden to establish the adequacy of an alternative forum, as it merely states that (1) plaintiff's action involves "at least the law of three separate jurisdictions, Ghana, France, and Maryland," and (2) "A French Court reviewing plaintiff's claims would apply the law of the appropriate forum upon its resolution of the choice–of–law analysis."

of witnesses warrants dismissal under *forum non conveniens*. *See id.* Quartey fails to recognize that in *Kultur,* the contract contained a choice–of–forum clause indicating that the plaintiff had agreed to litigate its disputes in England. *See id.* As a result, the court did not require the defendant to establish that the private and public factors weighed heavily in favor of the foreign forum. *Id.* Here, nothing relieves the defendant from his significant burden to show that litigation in New Jersey will cause "oppression and vexation to the defendant out of all proportion to the plaintiff's convenience." *Piper,* 454 U.S. at 241, 102 S.Ct. at 258.

Neither does the defendant identify sufficient public interest factors to warrant dismissal. The defendant makes no argument about the comparative congestion of American and Ghanaian court systems. Instead, he mistakenly focuses exclusively on choice–of–law, asserting that Ghanaian law would apply to the alleged contract formation and French law would control the alleged breach of contract. First, the defendant offers no evidence to support these contentions. In actuality, the time of the breach has not been determined; arguably, it occurred in New Jersey when Quartey failed to pay Burke a share of the Atlantic City earnings. *See supra* Sec. II(A). Thus, courts in both Ghana and the United States face choice–of–law questions. Moreover, even if the law of Ghana applies, this single factor is not compelling enough to nullify the plaintiff's choice of a legitimate forum. *Piper,* 454 U.S. at 260 n. 29, 102 S.Ct. at 268 n. 29 (need to apply foreign law not sufficient to justify dismissal when other factors show chosen forum appropriate); *Hoffman,* 420 F.2d at 427 (mere fact that court must determine and apply foreign law not justify dismissal of case otherwise properly before court).

## IV. CONCLUSION

For the foregoing reasons, the court finds that Defendant Ike Quartey is subject to personal jurisdiction in New Jersey. The court further finds that the doctrine of *forum non conveniens* does not excuse Quartey from answering suit in New Jersey. Therefore, the court denies Quartey's motion to dismiss for lack of personal jurisdiction and motion to dismiss pursuant to the doctrine of *forum non conveniens*.

The court will enter an appropriate order.

## ORDER

THIS MATTER having come before the court on Defendant Ike Quartey's Motion to Quash Service of Process and Motion to Dismiss for Lack of Personal Jurisdiction and Pursuant to the Doctrine of Forum Non Conveniens;

The court having reviewed the record and the submissions of the parties;

For the reasons set forth in the court's opinion of this date;

IT IS this 7th day of July, 1997, HEREBY

**ORDERED** that the Defendant's Motion to Quash the Service of Process is **DENIED;** and it is further

**ORDERED** that the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED;** and it is further

**ORDERED** that the Defendant's Motion to Dismiss Pursuant to the Doctrine of Forum Non Conveniens is **DENIED.**